**Keith VATTIMO, Appellant**

v.

**EABORN TRUCK SERVICE, INC., Appellee**

Superior Court of Pennsylvania.

Argued Dec. 5, 2000.

Filed May 30, 2001.

Reargument Denied Aug. 10, 2001.

Vicki K. Horne, Pittsburgh, for appellant.

Daniel P. McDyer, Pittsburgh, for appellee.

Before: DEL SOLE, LALLY–GREEN and BROSKY, JJ.

DEL SOLE, J.

¶ 1 This is an appeal from a judgment following a jury verdict in favor of Appellee-defendant. On appeal Appellant claims the verdict was against the weight of the evidence, that the verdict was rendered a nullity due to the absence of a juror, and that the court erred in two evidentiary rulings precluding the entry of certain evidence. We affirm.

¶ 2 Appellant brought this action seeking to recover for injuries he allegedly sustained as a result of an incident at his workplace. Appellant, as part of his job responsibilities, entered a loading area to inspect steel material. At the same time, Appellee's employee, Robert Pisano, was in the process of securing a load of steel on a flat bed trailer. In an effort to secure the load, Pisano placed chains around the load and tightened them using a lever binder. In this instance Pisano used a pipe, referred to as a binder pipe, to aid in providing leverage. The pipe flew out of Pisano's hand and hit Appellant on the side of his face and on his hard hat. Appellant claimed numerous injuries related to this event including cognitive injuries, headaches, olfactory-smelling experiences associated with temporal lobe epilepsy, vertigo, tinnitus, cervical and back injury, carpal tunnel syndrome, depression, fatigue and traumatic seizures.

 ¶ 3 Appellant first asserts that because there was uncontroverted evidence of injury and damages, the jury's verdict "should shock the conscience of this court" and that a new trial should be awarded to avoid injustice. Appellant's Brief at 28. The decision of whether or not to grant a new trial based upon a claim that the verdict is against the weight of the evidence rests with the trial court. *Dierolf v. Slade*, 399 Pa.Super. 9, 581 A.2d 649, 652 (1990). On appeal "the test is not whether the appellate court would have

decided the case in the same way but, rather, whether the jury's verdict was so contrary to the evidence as to shock one's sense of justice and 'to make the award of a new trial imperative, so that right may be given another opportunity to prevail.'" *Id.* (quoting *Commonwealth v. Taylor*, 324 Pa.Super. 420, 471 A.2d 1228, 1230 (1984)).

¶4 When considering this claim the trial court ruled:

> The general verdict in favor of the Defendant does not shock the conscience of the court, nor should it. There was sufficient evidence in the trial record to support any number of views of the evidence by the jury which would support its verdict in favor of the Defendant and against the Plaintiff. The jury might reasonably have found that the Defendant was neither negligent nor that any negligence on the part of the Defendant caused the Plaintiff's injuries, if any. The jury also might reasonably have concluded that even if the Defendant was both negligent and that such negligence caused injuries to the Plaintiff, that the Plaintiff did not sustain compensable damages.

Trial Court Opinion, 6/30/2000, at 1.

¶5 In light of our review of the record in this matter, we agree with the trial court's assessment of this claim and perceive no abuse of discretion in its ruling. The usage of binder pipes in the industry and the risks associated therewith were contested at trial, as was the type, nature and extent of Appellant's injuries. It is not the role of an appellate court to pass on the credibility of witnesses or to act as the trier of fact, and an appellate court will not substitute its judgement for that of the fact-finder. *Ludmer v. Nernberg*, 433 Pa.Super. 316, 640 A.2d 939 (1994). It is the function of the jury to evaluate evidence adduced at trial to reach a determination as to the facts, and where the verdict is based on substantial, if conflicting evidence, it is conclusive on appeal. *Id.* Faced with conflicting evidence about the usage of binder pipes and the injuries suffered by Appellant, we refuse to find the trial court abused its discretion in failing to award Appellant a new trial.

¶6 Appellant also contends that the verdict was a nullity because a juror was absent at the time the verdict was orally read in open court. The trial court recalled the facts related to this incident in its opinion and stated that due to a death in the family, a missing juror left after members of the jury had agreed on a verdict and the court staff was notified. Any complaint Appellant has with the validity of the verdict in view of these circumstances has been waived by Appellant's failure to object at trial. After the court made inquiry regarding the missing juror, the jury was polled. The court then stated:

> THE COURT: Okay. Before we release the jury, is there anything else we need to put on the record at this point?
>
> [APPELLANT'S COUNSEL]: Not at this time, Your Honor.

N.T., 1/21–20/98, at 235.

¶7 In order to preserve an issue for review, litigants must make timely and specific objections during trial and raise the issue in post-trial motions. *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116 (2000). Because Appellant failed to object at trial to the rendering of a verdict absent the missing juror, his claim on appeal is waived.

¶8 Appellant next asserts the trial court erred in refusing to allow him to offer testimony of Earl "Jay" Clayton, an overhead crane operator for Appellant's employer. Appellant sought to establish that Clayton had extensive background and history as a truck driver and sought to

have him testify regarding the hazards of using a lever extender to secure a load. The trial court refused to permit this testimony, noting that the witness was not designated as an opinion witness in Appellant's pretrial statement, and that the witness was not qualified to express an opinion of the subject of Appellee's negligence. The admission or exclusion of competent, relevant evidence is within the sound discretion of the trial court and will not be reversed absent a clear abuse of that discretion. *Catina v. Maree*, 272 Pa.Super. 247, 415 A.2d 413 (1979). On these facts, we find no abuse of the trial court's discretion.

 ¶ 9 We reach the same conclusion with regard to Appellant's final claim. Therein he alleges the trial court improperly refused to permit him to read into evidence parts of the deposition testimony of Appellee's employee, Robert Pisano. In response to this claim, the trial court noted that Appellant failed to make any offer of proof which would justify the use of this testimony under Pa.R.C.P. 4020. Appellant makes no response to this ruling in his discussion of his claim before this court. Rather, he merely asserts that because Pisano was Appellee's employee and responsible for causing the injury, his testimony should have been admitted.

¶ 10 Pisano was not a party, nor is it alleged that he was an officer, director or managing agent of Appellee which would justify the admission under Rule 4020(a)(2). Neither has Appellant alleged that this individual was dead, greater than a distance of 100 miles from the courthouse, unable to attend because of age, sickness, infirmity or imprisonment, as would be required for admission of his deposition testimony under Rule 4020(a)(3)(a), (b) and(c). Further, under Rule 4020(a)(3)(d) and (e), Appellant did not set forth any exceptional circum-

stances or any allegation that he was unable to procure Pisano's attendance by subpoena. Thus, there is no error in the trial court's ruling.

¶ 11 Judgment affirmed.

¶ 12 Judge Brosky files a dissenting opinion.

BROSKY, J., Dissenting.

¶ 1 As jurists, we have all heard the phrase "negligence in the air," and seen it used in various decisions. In this case, such negligence took the form of a three to four foot pipe that, literally, flew through the air until being stopped by Appellant's rather innocently situated face (actually the side of his face or head). Since the pipe's flight originated some forty feet, or more, from Appellant, basic physics suggests that the pipe had been propelled with a fair amount of force. Moreover, since Appellant was essentially "minding his own business," that is, inspecting steel material ordered by another customer, when he was struck by the pipe, and since it is rather safe to assume that being struck by a pipe that had traveled at least forty feet in the air would cause some compensable injury, one would have thought that Appellant was in possession of a "can't lose" case, a plaintiff's lawyer's dream. The image of Michael Jordan in possession of the basketball three feet from the basket, or Mario Lemieiux converging upon an empty net, with nary a defender between them and their respective goals, springs to mind as a functional equivalent. Yet somehow Jordan missed the hoop, Lemieux the empty net. The jury returned a defense verdict and I cannot help but ask, "how can that be?" More important to our task, the trial court refused to set aside the verdict and grant a new trial.

¶ 2 Without impermissibly invoking the doctrine of *res ipsa loquitur*, common sense suggests that pipes do not fly through the air, a distance of forty feet or more, from naturally occurring causes. Rather, some force is necessary to render the pipe airborne. Since the danger presented by a hard object flying through the air is relatively self-evident, it is only one logical step removed to suggest that the failure to prevent such an occurrence, or the occasioning of such an occurrence in itself, represents a failure to exercise due regard for the safety of others. Of course, a failure to exercise due regard for the safety of others is simply a layman's definition for negligence.

¶ 3 That Appellee's negligence, in some form, must be responsible for the accident that occurred here seems beyond rational dispute. Either Mr. Pisano, Appellee's employee, who employed the pipe in an attempt to securely fasten his load, failed to exercise due care in preventing the pipe from flying through the air, exercised poor judgment in using the pipe in the first place, or Appellee failed to provide proper training and/or instruction to Mr. Pisano with respect to his duties in loading the truck. This should not have been a mystery to the jury, as Appellant provided essentially uncontradicted expert testimony of the dangers of Mr. Pisano's actions and how its use deviated from a reasonable standard of care. Alternatively, Appellee was not without measures to ensure that nothing would fly off the truck and endanger bystanders. Barriers could have been erected on the side of the Flatbeds or Appellee could have insisted upon loading the truck in isolated bays so that no bystanders would be exposed to such risks.

¶ 4 In contrast, Appellee's evidence, provided by David Eaborn, essentially amounted to evidence that Appellee's employees had been using pipes to provide additional leverage for some time. Mr. Eaborn gave no testimony regarding the safety of using such a pipe to gain additional leverage, the standards within the industry for loading steel or other alternatives that might be safer. Of course, evidence that a party has been doing something in a particular way for a period of time does not equate to evidence that the practice is safe.

¶ 5 Moreover, that Appellant must have suffered some compensable injury as a result of being struck with a pipe in the face seems similarly self-evident. While Appellant pled a variety of injuries, some quite serious, others less so, and while there may have been some dispute as to the legitimacy of the injuries pled or the causation of them, it is beyond comprehension that Appellant would not have suffered some "injury" justifying at least a minor award from the jury, if not more.

¶ 6 Indeed, our Supreme Court has instructed that while a jury is not obliged to believe that every injury causes pain or the pain alleged, there are injuries to which human experience teaches there is accompanying pain, including, "the broken bone, the stretched muscle, twist of the skeletal system, injury to a nerve, organ or their function" which a jury may not disregard. *Boggavarapu v. Ponist*, 518 Pa. 162, 542 A.2d 516 (1988). I believe it is safe to add to the list being struck in the head by a pipe that has flown forty feet from its point of origin.

¶ 7 Perhaps more importantly, both Appellant's and Appellee's medical experts were in agreement that some injury was suffered as a result of the accident. While, as might be expected, Appellant's experts were of the opinion that Appellant's injuries and symptoms were quite extensive, notably, Appellee's expert seemingly conceded that Appellant had been injured, to some extent, as a result of

being struck by the pipe. Dr. Richard Weisman testified on Appellee's behalf. Dr. Weisman's diagnosis was that Appellant was suffering post-concussion disorder related to the accident. Of course, a diagnosis of post-concussion disorder indicates that Appellant had suffered a concussion as a result of being struck by the pipe. Lest the point escape, suffering a concussion is not a particularly pleasant experience. The Merriam Webster Collegiate Dictionary defines a concussion thusly: "a: a stunning, damaging, or shattering effect from a hard blow; *especially:* a jarring injury of the brain resulting in disturbance of cerebral function b: a hard blow or collision." Dr. Weisman further conceded that a lot of Appellant's symptoms were related to the accident. Weisman Deposition 1/27/98, at 76–78. These included cervical strain, head, neck and shoulder pain and auditory problems.

¶ 8 This Court, sitting *en banc*, agreed with a proposition presented to them in *Mano v. Madden*, 738 A.2d 493 (Pa.Super.1999), which they characterized as follows: "Thus, as there was an expert concession that appellee suffered some injury (albeit a mild one), there perforce must be some monetary award, however modest." We followed up the above premise with the assertion "[I]t is impermissible for a jury, in a personal injury case, to disregard the uncontroverted testimony from the experts of both parties that the plaintiff suffered some injury as a result of the accident in question." *Id.*, 738 A.2d at 497. Citing *Rozanc v. Urbany*, 444 Pa.Super. 645, 664 A.2d 619 (1995).

¶ 9 It is often stated that a jury is free to believe some, all or none of the evidence presented. Yet, *Neison v. Hines*, 539 Pa. 516, 653 A.2d 634 (1995), exposes this general assertion as a less than completely accurate statement of law. There our Supreme Court responded to the assertion that the obligation to assess and weigh the evidence rests with the factfinder by responding:

> We agree that the jury is free to believe all, some, or none of the testimony presented by a witness.... However, this rule is tempered by the requirement that the verdict must not be a product of passion, prejudice, partiality, or corruption, or must bear some reasonable relation to the loss suffered by the plaintiff as demonstrated by uncontroverted evidence presented at trial.... The synthesis of these conflicting rules is that a **jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic.**

*Id.*, 653 A.2d at 637. (Citations omitted).

¶ 10 The concept that the jury's verdict is sacrosanct is a myth worth dispelling. The fact of the matter is that juries return erroneous verdicts; perhaps, not frequently, but often enough to make it worth noting. Indeed, while it does not happen regularly, juries in criminal cases have been found to return guilty verdicts upon evidence later adjudged by an appellate court to be **insufficient**, as a mater of law, to support the verdict. While, as a practical matter, a great deal of deference must be afforded the jury's verdict, when the jury in a civil case ignores the evidence and renders a verdict so disproportionate to the uncontested evidence as to defy common sense and logic, the court is obligated to step in and put aside the verdict. In the present case it seems clear enough that, as Appellant protests, the jury either disregarded the competent evidence of record, disregarded their instructions from the court or suffered a substantial misapprehension of either law or fact. Alternatively, I believe, the verdict qualifies as one that is so contrary to the weight of the

evidence that it shocks one's conscience. Either way, a new trial should have been granted. That it was not is an injustice that is magnified by this Court's failure to reverse the trial court's failure to do what justice compels.