# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jonathan and Abbey Weber, h/w, | : | |
| Appellants | : | |
| | : | No. 2051 C.D. 2016 |
| v. | : | Argued: October 17, 2017 |
| | : | |
| Board of Directors of the Laurel Oaks | : | |
| Association and Mid Atlantic | : | |
| Management | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                     HONORABLE ROBERT SIMPSON, Judge (P.)
                     HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                                **FILED: November 13, 2017**

In this over-litigated case, Jonathan and Abbey Weber (Homeowners) ask whether the Court of Common Pleas of Bucks County[1] (trial court) erred in denying their post-trial motions seeking judgment *non obstante veredicto* (judgment n.o.v.) or, in the alternative, a new trial after a non-jury verdict in favor of the Laurel Oaks Homeowners' Association and its management company, Mid Atlantic Management (collectively, HOA). At issue is whether the trial court properly determined the HOA had authority to require Homeowners to remove a mailbox they installed that was stylized to resemble the Disney character "Tigger" on the ground that the mailbox violated the HOA's regulations. Upon review, we affirm.

## I. Background

---

[1] The Honorable Robert J. Mellon presided.

Homeowners purchased and reside at the home located at 572 Fawnhill Drive in Langhorne (the property). The residence is part of the HOA. At all relevant times, the HOA was governed by a set of guidelines, which include the Declaration of Covenants, Conditions, and Restrictions of Laurel Oaks (Declaration), the Laurel Oaks Architectural Guidelines (Guidelines), and the Laurel Oaks Homeowners Association By-Laws (By-Laws). The guidelines governed, among other things, the manner in which residents' properties were to be maintained. The guidelines were created and enforced by the HOA's Board of Directors (Board), which consisted of a group of elected residents.

Pursuant to the Declaration and Guidelines, residents are required to obtain approval from the Board to install, construct, or alter "structures" on their lots. Tr. Ct., Slip Op., 9/30/16, at 2. The "structures" requiring approval to install, construct, or alter are enumerated in the Declaration and Guidelines and include decks, fences, permanent play equipment, ledges, pools, storage tanks, accessory buildings, or any other "structures" on a lot. Id. The Guidelines further state that any change, addition, or alteration to the exterior of a home or lot must receive written Board approval before starting any work. The Guidelines also require that the type, style, and color of the proposed modification match those existing on the original home. Additionally, proposed modifications must be compatible with the architectural design character of the community. The Guidelines do not contain specific regulations regarding mailboxes.

In August 2012, Homeowners replaced their standard mailbox with a new mailbox stylized to resemble the Disney character Tigger. Shortly thereafter,

2

the HOA requested that Homeowners remove the mailbox. The HOA determined the mailbox violated the Guidelines because Homeowners did not apply to the Board to construct the mailbox on their lot. The HOA also asserted that a mailbox is a "structure," requiring Board approval before construction. Further, the HOA maintained that Homeowners' mailbox did not fit within the architectural design of the community.

Homeowners refused to remove the mailbox, and they appealed the HOA's request to the Board. The Board denied the appeal. The Board concluded that the right to prohibit the Tigger mailbox was based on its obligation to manage the community and protect its character and integrity. Homeowners argued that mailboxes are not set forth in the enumerated list of "structures" in the Guidelines that require Board approval; therefore, the HOA could not regulate mailboxes. Homeowners further asserted that "the installation of a new mailbox in the same location, and of similar size, does not constitute a 'change or addition' requiring approval" under the Guidelines. Id. at 4.

In April 2014, Homeowners, representing themselves, filed a complaint against the Laurel Oaks Homeowners' Association and Mid Atlantic Management, which set forth eight counts: breach of contract; breach of fiduciary duty; abuse of discretion; violation of due process; intentional infliction of emotional distress; negligent infliction of emotional distress; retaliation; and, discrimination. In their prayer for relief, Homeowners sought, among other things, a "declaration in their favor and against [the HOA] that the installation of [Homeowners'] mailbox is not

3

against the Guidelines, and as such they are entitled to keep it[.]" Reproduced Record (R.R.) at 22a.

The HOA filed preliminary objections to the complaint, which the trial court, through Judge James M. McMaster, sustained in part. Specifically, the trial court dismissed the Board as a party to the suit, and it dismissed all of the counts set forth in Homeowners' complaint with the exception of Homeowners' breach of contract claim. The trial court also struck several paragraphs in Homeowners' prayer for relief.

Thereafter, Homeowners filed an amended complaint naming as additional defendants "John Does 1-5." R.R. at 150a. The amended complaint set forth four counts: breach of contract; discrimination; disgorgement; and, equitable rescission. The HOA again filed preliminary objections. The trial court, through Judge McMaster, issued an order, which, among other things, dismissed John Does 1-5 as parties and struck the counts for discrimination, disgorgement, and equitable rescission. The HOA then filed an answer to the amended complaint. Homeowners also filed a motion for reconsideration of the trial court's order sustaining, in part, the HOA's preliminary objections, which the trial court denied.

Homeowners subsequently served interrogatories on the Board. Defendant Mid Atlantic Management served responses to the interrogatories.

By letter dated November 25, 2015, the HOA served Homeowners with notice, pursuant to Bucks County Local Rule *261, of its intent to certify the case as

ready for trial within 15 days of the date of the letter. On December 11, 2015, one day after expiration of the 15-day period provided for by local rule, Homeowners sent the HOA a letter, by email, stating their objection to the HOA's certification of the matter as ready for trial.

On December 23, 2015, about a week after the HOA filed its praecipe for trial, Homeowners filed a motion to strike interrogatory responses or compel full and complete responses. Five days later, Homeowners filed a motion to extend discovery.

On March 4, 2016, the case was ordered on the trial list for the civil trial term in April 2016. Thereafter, the trial court, through Judge McMaster, issued an order denying Homeowners' motion to extend discovery. Homeowners filed a motion for reconsideration. Homeowners also filed a motion seeking to stay the proceedings pending resolution of the following outstanding motions: (1) a motion to strike the HOA's discovery objections and compel full and complete responses; (2) a motion for reconsideration of the trial court's order denying Homeowners' motion to extend discovery; and, (3) a motion to stay the trial pending resolution of Homeowners' undecided motions.

In April 2016, the matter proceeded to a non-jury trial. Homeowners represented themselves. Upon consideration of the evidence presented, the trial court entered a verdict in favor of the HOA. It ordered Homeowners to remove the Tigger mailbox within 30 days.

5

Homeowners then retained counsel and filed post-trial motions, which the trial court denied. Additionally, the trial court issued an order denying Homeowners' motion to strike discovery objections and compel full and complete responses as moot because the matter proceeded to trial, and a non-jury verdict was entered.

Homeowners appealed.[2] The trial court directed them to file a concise statement of the errors complained of on appeal pursuant to Pa. R.A.P. 1925(b), which they did. The trial court then issued an opinion pursuant to Pa. R.A.P. 1925(a).

In its opinion, the respected trial court explained that through their 1925(b) Statement, Homeowners broadly asserted the trial court erred and abused its discretion in denying Homeowners' motions for judgment n.o.v. and a new trial. Included within these two claims of error, the trial court stated, were over 30 paragraphs raising various sub-issues, many of which were redundant. Despite the volume of sub-issues, the trial court's opinion focused on what it deemed the core issues presented in Homeowners' 1925(b) Statement, that the trial court erred in finding that: (1) a mailbox is a "structure" under the Guidelines; (2) the Board had the authority to regulate mailboxes under the Guidelines; (3) the Tigger mailbox did not comply with the architectural design of the community; and, (4) the Board did

---

[2] Homeowners filed a notice of appeal to the Superior Court, which transferred the appeal to this Court. Initially, this Court quashed the appeal as premature because Homeowners failed to comply with this Court's order directing entry of judgment on the docket below. Homeowners filed a petition for reconsideration, through which their attorney asserted he did not receive notice of this Court's orders. This Court subsequently granted reconsideration and reinstated the notice of appeal.

not abuse its discretion in determining the Tigger mailbox did not comply with the architectural design of the community.

The trial court also noted Homeowners raised several sub-issues pertaining to the trial court's rulings on Homeowners' motions to extend discovery and the HOA's preliminary objections to Homeowners' amended complaint. The trial court explained Judge McMaster ruled on these filings prior to trial. In particular, Judge McMaster sustained, in part, the HOA's preliminary objections to Homeowners' amended complaint. Judge McMaster also denied Homeowners' motion for reconsideration of that order. Additionally, Judge McMaster denied Homeowners' motion to extend the discovery period. To the extent Homeowners challenged these rulings, the trial court stated, the coordinate jurisdiction rule prevented it from taking action in contravention of any prior orders issued by Judge McMaster.

As to the merits, the trial court initially observed that, when an individual purchases a property within a homeowners association, the homeowner relinquishes some control over his property. Here, Homeowners own property in the Laurel Oaks community; therefore, they are bound by the HOA's By-Laws.

The trial court first considered whether the HOA had the right to regulate Homeowners' Tigger mailbox. The trial court noted that Homeowners challenged the HOA's right to regulate mailboxes on two grounds. First, Homeowners believed the HOA could not regulate their mailbox because mailboxes were not specifically addressed in the Guidelines. Additionally, Homeowners

7

argued a mailbox was not a "structure" under the Guidelines. The trial court rejected both assertions.

The trial court first explained, although mailboxes were not specifically mentioned in the Guidelines, the Declaration and Guidelines expressly indicated that they were illustrative rather than exhaustive. Further, the trial court stated, an examination of both the plain meaning and the legal definition of the term "structure," including definitions found in the Pennsylvania Municipalities Planning Code[3] (MPC) and Black's Law Dictionary, revealed that a mailbox is a "structure" as intended by the Declaration and Guidelines despite the absence of a specific definition of the term "structure" in the Declaration and Guidelines. Also, other jurisdictions specifically recognize mailboxes as "structures" in a variety of contexts. Thus, the trial court concluded a mailbox falls within both the ordinary and legal definitions of a "structure"; as a result, the HOA had authority to regulate mailboxes under the Declaration and Guidelines.

In addition, the trial court determined Homeowners' construction of the Tigger mailbox represented a change, addition, or alteration to the property, which required prior approval by the HOA. Homeowners' construction of the mailbox without prior approval violated the covenant between the HOA and Homeowners.

After determining it was within the HOA's authority to regulate mailboxes, the trial court stated the remaining issue was whether the Tigger mailbox was compatible with the Guidelines. The trial court noted that a homeowners'

_____

[3] Act of July 31, 1968, P.L. 805, as amended, 53 P.S. §§10101-11202.

8

association may refuse to allow residents to build structures on their properties if those structures are not consistent with the architectural integrity of the community.

Here, the trial court determined Homeowners' Tigger mailbox did not fall within the HOA's architectural scheme, and, as a result, under the Declaration and Guidelines, the HOA appropriately prohibited the mailbox. The trial court explained that, although it was apparent that the HOA failed to establish meaningful standards as to what characteristics were within its architectural policies, the Guidelines were not unlawful. The Guidelines' architectural policies grant the HOA broad discretion to determine what violates the architectural design of the community. Thus, all that was required of the HOA was to present evidence showing a rational basis for determining the Tigger mailbox did not comply with the architectural standards of the community, which it did here.

Further, the trial court stated, the Guidelines require that any proposed change match the type, style, and color of the original home. Here, Eric Kadish, the HOA President, testified that the color scheme of the Tigger mailbox was different than that of the original home. He explained the mailbox did not match Homeowners' home and provided reasons for his opinion. The trial court stated this testimony constituted sufficient evidence to show Homeowners' Tigger mailbox deviated from the architectural design of the community. Therefore, the trial court concluded the Board had a sufficient basis for finding Homeowners' Tigger mailbox did not comply with the architectural design character of the community. As such, the Board did not abuse its discretion under the Guidelines in disapproving Homeowners' mailbox.

9

For these reasons, the trial court explained, it did not err in entering a verdict in favor of the HOA and ordering Homeowners to remove the Tigger mailbox. This matter is now before us for disposition.

## II. Issues

On appeal, Homeowners assert the trial court erred in denying their post-trial motion seeking judgment n.o.v. where: the trial court ordered Homeowners to remove their Tigger mailbox despite the fact that the HOA never filed a counterclaim seeking such relief; and, the trial court erred in finding the HOA established contractual or other authority to approve or disapprove Homeowners' mailbox. Homeowners also contend they were denied the opportunity to take discovery to rebut the alleged existence of such authority. Additionally, Homeowners argue the trial court erred in denying their post-trial motion seeking a new trial where the verdict was against the weight of the evidence and the judicial process gave rise to a serious injustice.[4]

## III. Discussion
## A. Judgment n.o.v.
### 1. Contentions

---

[4] Although Homeowners state three issues, their brief is primarily comprised of two sections, one relating to their claims that the trial court erred in failing to grant judgment n.o.v. in their favor and the other regarding their assertions that the trial court erred in denying their request for a new trial.

Homeowners first argue the trial court's order denying their post-trial motion seeking judgment n.o.v. warrants reversal because the trial court abused its discretion and committed errors of law. To that end, Homeowners assert the trial court's verdict ordering them to remove the Tigger mailbox within 30 days constitutes an error of law that prejudiced Homeowners' interests because the HOA never filed a counterclaim seeking such relief, nor were Homeowners afforded notice of any such counterclaim.

Homeowners further contend the trial court abused its discretion when it denied their post-trial motion seeking judgment n.o.v. because the trial court's verdict is against the weight of the evidence such that no two minds could reasonably disagree that the verdict should have been rendered for Homeowners. Contrary to the trial court's verdict, Homeowners argue, record evidence and the testimony of Mid Atlantic Management witness Nicole Bray, former Board Member Almando Carrasquillo, and Board President Eric Kadish, established the HOA lacked contractual or other authority to approve or disapprove Homeowners' Tigger mailbox, impose fines on Homeowners with regard to the mailbox, or require Homeowners to remove the mailbox.

Further, contrary to the trial court's verdict, Homeowners assert, record evidence and testimony at trial established the HOA arbitrarily and capriciously determined Homeowners' Tigger mailbox violated the Guidelines.

Moreover, Homeowners maintain, the trial court only utilized materials extrinsic to the four corners of the Declaration, Guidelines, and By-Laws to

11

erroneously infer that mailboxes fall within the ambit of structures erected on properties within the HOA that are subject to regulation. Homeowners argue the provisions of Declaration and Guidelines cited by the trial court in support of its determination that the HOA had authority to regulate Homeowners' mailbox are inapposite. Further, they contend, record evidence and testimony rebuts the trial court's unfounded conclusions. Thus, Homeowners assert the trial court's denial of their post-trial motion seeking judgment n.o.v. warrants reversal. Homeowners contend, if the trial court considered the testimony and plain language of the documents referenced above, even in a light most favorable to the HOA, no two minds could reasonably disagree that the verdict should have been rendered in Homeowners' favor.

## 2. Analysis

In reviewing the denial of a motion for judgment n.o.v., we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Reott v. Asia Trend, Inc., 7 A.3d 830 (Pa. Super. 2010), aff'd, 55 A.3d 1088 (Pa. 2012). We will reverse a trial court's denial only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Id.

There are two bases on which judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law; or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. Id. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Id. With the second, the court reviews

12

the record and concludes the evidence was such that a verdict for the movant was beyond peradventure. Id.

As to questions of law, our scope of review is plenary. Haan v. Wells, 103 A.3d 60 (Pa. Super. 2014). With regard to questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the fact-finder. Id. Thus, "[i]f any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for [judgment n.o.v.]. A [judgment n.o.v.] should be entered only in a clear case." Id. at 70 (citation omitted).

Further, "[t]he factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Id. (citation omitted). The trial court may award judgment n.o.v. "only when the [trial court's] verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion." Id. (citation omitted). When a fact finder's verdict is "so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking." Id. (citation omitted).

Homeowners first claim that the trial court's verdict requiring them to remove the Tigger mailbox within 30 days was erroneous and prejudiced Homeowners because the HOA did not file a counterclaim seeking such relief, and

Homeowners were not afforded notice of any such counterclaim. The trial court did not specifically address this issue. Nevertheless, through their amended complaint, Homeowners averred that they "were within their rights as owners of their house to install a mailbox of their choice, and the [HOA] acted in excess of the authority vested in [it] by the Guidelines when [it] instructed [Homeowners] to remove their mailbox and assessed fines because of the installation of the mailbox." Am. Compl. at ¶43; R.R. at 157a. Further, in their prayer for relief, Homeowners sought, among other things: "A declaration in their favor and against [the HOA] that the installation of [Homeowners'] mailbox is not against the [g]uidelines, and as such they are entitled to keep it[.]" Am. Compl., Prayer for Relief at ¶1; R.R. at 160a.

In addition, during his opening statement at trial, Homeowner Jonathan Weber stated: "We're going to be asking at the close of our trial for the Court to allow the mailbox to stay …." R.R. at 605a. In response, the HOA's counsel stated in his opening statement: "[Judge McMaster] … restricted the recovery that [Homeowners] could receive … [through his ruling on preliminary objections] and it's been restricted to a declaration of whether or not the mailbox stays or goes …." R.R. at 610a (emphasis added). Homeowners did not object to the HOA's characterization of the appropriate remedy being removal of the mailbox.[5] Further, at the conclusion of the non-jury trial, Homeowners requested that the trial court "confirm that the mailbox can stay[.]" R.R. at 782a. As a result, we reject Homeowners' claim that the trial court erred in ordering them to remove the Tigger

_____

[5] While Homeowners offered an objection, it related to the HOA's counsel's claim that the only relief sought by Homeowners that remained viable as a result of Judge McMaster's ruling on preliminary objections was "whether or not the mailbox stays or goes and the declaration of whether or not the fines can be levied or he's relieved of the responsibility of paying those fines." R.R. at 610a. Homeowners attempted to assert that additional aspects of their prayer for relief remained viable after Judge McMaster's ruling.

14

mailbox absent a counterclaim filed by the HOA on the ground they received no notice of such a claim.

Next, as to the merits of this dispute, the trial court explained:

> The fact that the [Declaration and Guidelines] do not specifically mention mailboxes does not bar [the HOA] from regulating mailboxes. [Homeowners] correctly pointed out that the Guidelines' enumerated list of [items] that required prior approval did not include the term 'mailbox.' However, the Guidelines explicitly state that the list is not limited to the enumerated items. Instead, the Guidelines indicate that they 'do not intend to list all of the [restricted items], but to elaborate and clarify some of these restrictions.' [R.R. at 97a.] As the list is not exhaustive, the absence of the term 'mailbox' in no way excludes mailboxes from [the HOA's] jurisdiction.
>
> [The HOA] had the right to regulate mailboxes because the term 'mailbox' fits the ordinary and legal definitions of 'structure.' … When the words of a contract are not defined, the words shall be interpreted by their ordinary meaning. The [MPC] defines 'structure' as 'any man-made object having an ascertainable stationary location on or in land … whether or not affixed to the land.' [Section 107 of the MPC, 53 P.S. §10107.] Black's Law Dictionary defines a 'structure' as '[a]ny construction, production or, piece of work, artificially built up or composed of parts purposefully joined together[.]' [BLACK'S LAW DICTIONARY 1464 (8th ed. 2004).] Further, other jurisdictions have specifically recognized mailboxes as a 'structure' in a variety of legal contexts.
>
> Here, in establishing the right to regulate mailboxes, [the HOA] concluded that a mailbox is a 'structure,' and thus subject to the Guidelines. … [T]he [Declaration] hold[s] that [it] may regulate any 'structure' on a 'property.' [Section 13.01(r) of the Declaration.] [Homeowners], however, insisted that a mailbox is not a

15

'structure.' The term 'structure' is not defined anywhere within the [Declaration or Guidelines] and so the ordinary meaning and legal definitions apply. … [A] mailbox fits both ordinary and legal definitions of a 'structure.' As a mailbox fits the definition of 'structure,' mailboxes are therefore within [the HOA's] control, pursuant to the [Declaration and Guidelines].

[The HOA] may regulate the 'Tigger' mailbox because it can be considered a change, addition, and/or alteration to [Homeowners'] property. … Section [2] of Guidelines explicitly states:

> '*Any* change or addition to the exterior of the home or lot must have the prior written approval of the [Board] before starting or committing to *any* work.'

Additionally, Section [3] further states that:

> 'All requests must be made in writing … [t]he request should include a plot plan and project plans showing the nature, kind, shape, height, materials, finish, colors and location of the [o]wner's proposed changes or additions to the [l]ot or [d]welling.'

Here, [Homeowners'] construction of the 'Tigger' mailbox without prior approval violated the covenant between [Homeowners] and [the HOA]. The mailbox represented a change, addition, or alteration to the exterior of the property. Initially, [Homeowners] had an acceptable mailbox in place. [Homeowners] then removed their mailbox and installed the 'Tigger' mailbox. This replacement may be viewed as (i) a change of mailboxes, (ii) an addition of a new mailbox, or (iii) an alteration of the former mailbox. … Such an alteration, as set forth in the Guidelines, requires approval by the Board prior to construction. [Homeowners] themselves described the size of their former mailbox as 'similar' to the 'Tigger' mailbox, necessarily implying that the mailboxes are not the same. There has thus been a change or alteration to the original mailbox and [Homeowners] acknowledged this alteration. Such an alteration, as set forth in the Guidelines, requires approval by the Board

16

prior to construction. Through this analysis, the 'Tigger' mailbox is unquestionably subject to [HOA] regulation and required approval before its construction. …

The Court having determined that it was within [the HOA's] discretion to regulate the 'Tigger' mailbox, the remaining issue is whether the 'Tigger' mailbox is compatible with [the] Guidelines. …

Here, [Homeowners'] 'Tigger' mailbox did not correspond with the architectural scheme of [the HOA] and thus, under the Guidelines, [the HOA] acted appropriately in prohibiting the mailbox. Although it is apparent that [the HOA] has failed to establish meaningful standards as to what characteristics are within the architectural policies, the Guidelines are not unlawful. The architectural policies of the Guidelines clearly grant [the HOA] broad discretion to determine what violates the architectural design of the community. Thus, all that was required of [the HOA] was to present evidence showing a rational basis for determining that the 'Tigger' mailbox did not comply with the architectural standards of the community.

Furthermore, as previously stated, the Guidelines require that any proposed changes match the type, style, and color of the original home. Specifically, the Guidelines state that the 'color of the proposed exterior materials shall match those existing on the original home or be compatible with the architectural design of the community.' Eric Kadish, the president of [the HOA], presented evidence that the color scheme of the 'Tigger' mailbox was different than that of the original home. … [Kadish] further testified to why [Homeowners'] mailbox did not meet the architectural standards of the community[.] Such testimony is sufficient evidence that [Homeowners'] 'Tigger' mailbox deviates from the architectural design of [the HOA]. Therefore, the Board had a sufficient basis for finding that [Homeowners'] 'Tigger' mailbox did not comply with the architectural design character of the community of Laurel Oaks. Accordingly, the Board did not abuse its discretion granted

17

under the Guidelines in disapproving [Homeowners']
mailbox.

Tr. Ct., Slip Op., at 7-12 (underlined emphasis added) (footnotes omitted). Contrary

to Homeowners' assertions, we discern no error in the trial court's analysis.

To that end, Article XIII of the Declaration, titled "Use Restrictions,"

states, in relevant part:

> (r) <u>no owner shall be permitted to erect, install, construct
> or alter</u> any sheds, decks, fences, permanent play
> equipment, ledges, underground pools, tents (other than
> temporary tents) storage tanks or accessory buildings <u>or
> structures on the property without the prior written
> approval of the [Board] and/or the Architectural Review
> Committee</u>, which approvals shall be obtained in
> accordance with the procedures set forth in Article XIV
> below and in accordance with all applicable provisions of
> this [D]eclaration, the [By-Laws] and any rules and
> regulations promulgated by the [Board].

R.R. at 74a (emphasis added). In turn, Article XIV of the Declaration, titled

"Architectural Review as to Owners' Lots and Dwellings," states, as relevant:

> In order to comply with Section 13.01(r) each [o]wner
> shall submit … to the President of the [HOA] or the
> chairman of the Architectural Review Committee, plans
> and specifications showing the nature, kind, shape, height,
> materials, finish, colors and location of the [o]wner's
> proposed changes, alterations or additions to the [l]ot or
> [d]welling. … The committee shall review the plans to
> determine whether they are harmonious and compatible
> with the [l]ots and [d]wellings in the [c]ommunity.

R.R. at 75a.

In addition, the Guidelines state, in pertinent part:

## GENERAL REVIEW GUIDELINES

\* \* \* \*

2. <u>Any change</u> or addition to the exterior of the home <u>or lot must have the prior written approval of the [Board] before starting or committing to any work</u>.  <u>Examples</u> of items requiring prior approval include decks, patios, screen rooms and additions, in-ground pools, windows and skylights, fences, trees, plants, fountains, sheds, playsets, <u>etc.</u>

3. All requests must be made in writing[.] … The request should include a plot plan and project plans showing the nature, kind, shape, height, materials, finish, colors and location of the [o]wner's proposed changes or additions to the [l]ot or [d]welling.

4. <u>Any</u> addition or <u>exterior alteration</u> to an existing home <u>or lot shall follow the same design character of the original home.  The type, style and color of proposed exterior materials should match those existing on the original home and be compatible with the architectural design character of the community</u>.

\* \* \* \*

**10. If work commences prior to the approval of any alteration or improvement, the Board may levy a penalty fine against an owner's account and may request that the alteration or improvement be changed to meet the current standards approved by the Board. The procedures for levying such a fine can be found in the Laurel Oaks Rules and Regulations Enforcement Procedure Resolution.**

R.R. at 95a-96a (underlined emphasis added).

Here, although the Declaration does not expressly reference mailboxes, it broadly states that no owner is permitted to erect, install, construct or alter

*structures* on the property without prior written approval of the Board and/or the Architectural Review Committee. R.R. at 74a. Although not expressly defined in the Declaration, a mailbox clearly falls within the plain meaning of the term "structure." See BLACK'S LAW DICTIONARY 1464 (8th ed. 2004) ("Any construction, production, or piece of work artificially built up or composed of parts purposefully joined together[.]"); see also MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1163 (10th ed. 1993) ("something … that is constructed"). Therefore, Board and/or Architectural Review Committee approval was required before Homeowners altered their existing mailbox and installed the Tigger mailbox. Homeowners did not obtain such approval here.

Further, while Homeowners assert the trial court erred in utilizing outside sources, such as the MPC, Black's Law Dictionary and cases from other jurisdictions for guidance in defining the undefined term "structure," we discern no error in that regard. To that end, "[w]hen interpreting a contract, a court should afford undefined terms their ordinary meaning." Moore v. Dep't of Transp., Bureau of Motor Vehicles, 19 A.3d 1200, 1206 (Pa. Cmwlth. 2011) (citing Kripp v. Kripp, 849 A.2d 1159 (Pa. 2004); Pines Plaza Bowling, Inc. v. Rossview, Inc., 145 A.2d 672 (Pa. 1958) (using dictionary definition to ascertain plain meaning of contract language)). Indeed, "[i]t is well-established principle that words in a contract are to be construed in their natural, plain, and ordinary sense … and we may inform our understanding of these terms by considering their dictionary definitions." True R.R. Assocs., L.P. v. Ames True Temper, Inc., 152 A.3d 324, 339 (Pa. Super. 2016), appeal denied, ___ A.3d ___ (Pa., Nos. 30-34 MAL 2017, filed May 23, 2017) (quoting Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 108 (Pa.

20

1999); <u>Telecomm. Network Design v. Brethren Mut. Ins. Co.</u>, 5 A.3d 331 (Pa. Super. 2010) (internal quotation omitted)). This includes the use of definitions in sources such as Black's Law Dictionary. <u>Moore</u>.

In addition, as set forth above, the Guidelines state that *any* change to a lot must have prior written Board approval before starting or committing to any work. R.R. at 95a. The Guidelines set forth *examples* of items requiring approval, and they indicate, through the use of the term "etc." that the list is not exhaustive. <u>Id.</u> The Guidelines also require that any alteration to an existing lot follow the same design character of the original home. R.R. at 96a. Further, the type, style, and color of proposed exterior materials should match those existing on the original home and be compatible with the architectural design character of the community. R.R. at 96a. The Guidelines also state that if work begins prior to approval of any alteration, the Board may levy a fine against an owner and request that the owner change the alteration to meet current standards approved by the Board. <u>Id.</u>

Here, the trial court determined Homeowners' removal of their existing mailbox and installation of the Tigger mailbox constituted a change that required prior Board approval. Further, the trial court credited the HOA Board President's testimony that the Tigger mailbox Homeowners installed did not follow the same design character of the original home and did not match the type, style, and color existing on Homeowners' original home. Tr. Ct., Slip Op., at 11-12. The record supports the trial court's determinations. R.R. at 730a-33a, 738a-39a.

21

Consequently, no error is apparent in the trial court's denial of Homeowners' post-trial motion seeking judgment n.o.v.

## B. New Trial
### 1. Contentions

Alternatively, Homeowners argue, the trial court's denial of their post-trial motion seeking a new trial warrants reversal because, for the same reasons set forth above regarding their entitlement to judgment n.o.v., the trial court's verdict was against the weight of the evidence.

In addition, Homeowners assert they are entitled to a new trial where the trial court abused its discretion and erred as a matter of law when it: sustained the HOA's preliminary objections; denied Homeowners' motion to extend discovery; and, failed to rule on Homeowners' motion to strike the HOA's discovery objections and compel more specific responses prior to trial. Homeowners contend the trial court's decisions constitute reversible error because they effectively precluded Homeowners from obtaining evidence to support the merits of their claims against the HOA at trial; however, the trial court based its ruling in part on Homeowners' failure to provide that evidence for the trial court's consideration.

Finally, Homeowners argue, the trial court's denial of their request to sequester witnesses was an abuse of discretion that prejudiced Homeowners' interests and further establishes that the trial court's denial of Homeowners' post-trial motion for a new trial warrants reversal.

22

To that end, Homeowners assert the trial court's denial of their request to sequester defense witnesses constituted an abuse of discretion that prejudiced Homeowners because the witnesses, including Board President Eric Kadish, a non-party, remained present and heard the testimony of Mid Atlantic Management representative Nicole Bray. Homeowners contend Kadish's exposure to Bray's testimony prejudiced Homeowners by allowing Kadish the opportunity to consider Bray's statements as to issues such as: the scope of the Board's authority to approve or disapprove mailboxes; the basis for the Board's decision to disapprove Homeowners' mailbox; and, the Board's considerations in disapproving Homeowners' mailbox. Homeowners maintain Kadish's ability to consider Bray's testimony on these issues before he testified allowed him to shape his testimony in accordance with Bray's testimony to bolster the HOA's position. Because Homeowners were not permitted to depose either witness, they assert, they were unable to present the trial court with potentially contradictory testimony that may have been obtained in the absence of Kadish hearing Bray's testimony.

### 2. Analysis

In responding to a request for a new trial, a trial court must follow a two-step process. Daddona v. Thind, 891 A.2d 786 (Pa. Cmwlth. 2006). First, it must decide whether one or more mistakes occurred at trial. Id. Second, if the court concludes a mistake occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. Id. The harmless error doctrine underlies every decision to grant or deny a new trial. Id. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would rule differently; the moving party must show prejudice resulting from the mistake. Id.

23

As an appellate court, to review the two-step process of the trial court for granting a new trial, we also employ a two prong analysis. Id. First, we examine the decision of the trial court that a mistake occurred. In so doing, we must apply the appropriate standard of review. Id. If the alleged mistake involved an error of law, we must scrutinize for legal error. Id. If, on the other hand, the alleged mistake involved a discretionary act, we must review for an abuse of discretion. Id. If there were no mistakes at trial, we must affirm a decision by the trial court to deny a new trial as the trial court cannot order a new trial where no error of law or abuse of discretion occurred. Id.

Further, a new trial based on weight of the evidence issues will not be granted unless the verdict is so contrary to the evidence as to shock one's sense of justice; a mere conflict in testimony will not suffice as grounds for a new trial. Elliott v. Ionta, 869 A.2d 502, 504 (Pa. Super. 2005) (citation omitted). Upon review, the test is not whether this Court would have reached the same result on the evidence presented, but rather after due consideration of the evidence found credible by the fact-finder, and viewing the evidence in the light most favorable to the verdict winner, whether the court could reasonably reach its conclusion. Id. "It is not the role of an appellate court to pass on the credibility of witnesses or to act as the trier of fact, and an appellate court will not substitute its judgement [sic] for that of the fact-finder." Vattimo v. Eaborn Truck Serv., Inc., 777 A.2d 1163, 1165 (Pa. Super. 2001).

24

Here, as explained in greater detail above, the record supports the trial court's determinations; therefore, contrary to Homeowners' repeated assertions, the trial court's verdict is not against the weight of the evidence.

Nevertheless, Homeowners argue they are entitled to a new trial based on various alleged errors that occurred prior to trial. In particular, they contend the trial court erred in: sustaining, in part, the HOA's preliminary objections; denying Homeowners' motion to extend discovery; and, failing to rule on Homeowners' motion to strike the HOA's discovery objections and compel more specific responses before trial. With the exception of the trial court's denial of their request for sequestration of witnesses, discussed below, Homeowners offer no assertion that *any mistakes occurred at trial*.

Further, as to the pre-trial rulings challenged by Homeowners, despite their conclusory assertions, Homeowners offer no explanation as to *how* the trial court's ruling on preliminary objections was erroneous or *how* this ruling impacted the trial. Additionally, in their main brief, Homeowners provide no explanation as to *how* the trial court erred in denying their motion to extend discovery and failing to rule on their motion to strike the HOA's discovery objections and compel more specific responses before trial.

Nevertheless, in their reply brief, Homeowners assert the denial of their motions prevented them from obtaining the following items during discovery: depositions of HOA Board members; the names of Mid Atlantic Management personnel with knowledge of the relevant facts other than Nicole Bray; clarification of the specific terms the HOA used in response to Homeowners' interrogatories;

25

and, documents, materials, or witnesses with information as to the times, dates, locations and attendees of meetings in which Homeowners' property was discussed. Despite these assertions, Homeowners offer no clear explanation as to *how* their purported inability to discover these items impacted the trial.

Moreover, after the trial court issued its ruling on the HOA's preliminary objections to Homeowners' amended complaint, Homeowners waited approximately 10 months to initiate discovery by serving interrogatories on the HOA. R.R. at 269a. The HOA answered the interrogatories. R.R. at 290a. About a month later, the HOA served Homeowners with a notice, pursuant to Bucks County Local Rule *261(b), indicating its intent to certify the case as ready for trial. R.R. at 317a. At that point, Homeowners had 15 days to object to the certification and identify the discovery they wished to conduct. B.C.R.P. No. *261(b). Homeowners did not object within 15 days, and the HOA filed a certification for trial in December 2015, about 20 months after Homeowners filed suit. R.R. at 256a.

After the HOA filed its praecipe certifying the case for trial, Homeowners filed a motion to strike the HOA's discovery responses and compel full and complete responses. R.R. at 260a. Shortly thereafter, Homeowners filed a motion to extend the discovery period. R.R. at 303a. The trial court denied Homeowners' motion to extend the discovery period. R.R. at 393a.[6] This is not surprising in light of the fact that Homeowners did not indicate their intention to pursue discovery within 15 days of the HOA's notice indicating its intent to certify

---

[6] Homeowners filed an application for reconsideration, which was apparently denied by operation of law.

26

the matter for trial as required by Bucks County Local Rule *261(b).[7]  Homeowners assert the trial court should have excused their untimely objection to the HOA's notice of intent to certify the case for trial, which they submitted one day after the expiration of the 15-day period to object.  In support, they rely on Pa. R.C.P. No. 126, which allows a trial court to disregard procedural errors that do not substantially affect the rights of the parties.  However, this Rule is discretionary with the trial court.  Thus, while the trial court *may* ignore procedural noncompliance, it is not required to do so.  See Pa. R.C.P. No. 126; Anderson v. Centennial Homes, Inc., 594 A.2d 737 (Pa. Super. 1991).

Further, in their motion to extend the discovery period, Homeowners offered no explanation as to why they waited approximately nine months after the close of the pleadings to initiate discovery nor did they clearly specify what discovery was necessary prior to trial or how they would suffer prejudice if the discovery period was not extended.  R.R. at 303a-05a.  Under these circumstances, no abuse of discretion is apparent in the trial court's denial of Homeowners' motion to extend the discovery period.

In addition, as to Homeowners' motion to strike the HOA's discovery responses and compel full and complete responses, Homeowners did not file this motion until *after* the case was certified for trial.  As such, no error is apparent in the trial court's dismissal of this motion as moot after trial.  In any event, Homeowners offer no explanation as to how this ruling warrants a new trial.

---

[7] "The application, construction, and interpretation of local rules of court are matters primarily to be determined by the trial court promulgating the rule, and this Court will only interfere where the trial court commits an abuse of discretion."  Reaves v. Knauer, 979 A.2d 404, 414 (Pa. Cmwlth. 2009) (citation omitted).

As a final issue, Homeowners maintain the trial court erred in denying their motion for sequestration of the HOA's witnesses at trial.[8] "[T]he decision to sequester witnesses is left to the discretion of the trial judge and will be reversed only for an abuse of discretion." Koller Concrete, Inc. v. Tube City IMS, LLC, 115 A.3d 312, 318 (Pa. Super. 2015). "A request for sequestration of a witness or witnesses should be specific and should be supported by some reason or reasons demonstrating that the interests of [j]ustice require it." Id.

Here, our review of the trial transcript reveals Homeowners offered no specific reasons in support of their request for sequestration. R.R. at 599a-600a. As such, we discern no abuse of discretion in the trial court's denial of that request. Koller Concrete.

---

[8] Pennsylvania Rule of Evidence 615, which governs sequestration of witnesses states:

> At a party's request the court may order witnesses sequestered so that they cannot learn of other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize sequestering:
>
> (a) a party who is a natural person;
> (b) an officer or employee of a party that is not a natural person (including the Commonwealth) after being designated as the party's representative by its attorney;
>
> (c) a person whose presence a party shows to be essential to presenting the party's claim or defense; or
>
> (d) a person authorized by statute or rule to be present.

Pa.R.E. 615.

This litigation would have benefited from more adult attention early on. In default of that, however, we have carefully reviewed the many issues put before us.  Based on the foregoing, we affirm.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan and Abbey Weber, h/w, : 
                              Appellants : 
                                         :    No. 2051 C.D. 2016 
                  v. : 
                                         : 
Board of Directors of the Laurel Oaks : 
Association and Mid Atlantic : 
Management : 

# **O R D E R**

**AND NOW**, this 13th day of November, 2017, the order of the Court of Common Pleas of Bucks County is **AFFIRMED**.

_____

ROBERT SIMPSON, Judge
