J-A09019-15

2015 PA Super 92

| | | |
|---|---|---|
| KOLLER CONCRETE, INC., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TUBE CITY IMS, LLC, | : | |
| | : | |
| Appellant | : | No. 2028 EDA 2014 |

Appeal from the Judgment entered June 25, 2014,
Court of Common Pleas, Northampton County,
Civil Division at No. C-0048-CV-2011-00629

BEFORE:  BOWES, DONOHUE and STABILE, JJ.

OPINION BY DONOHUE, J.:                **FILED APRIL 21, 2015**

Tube City, LLC ("Tube City") appeals from the judgment entered in the amount of $34,7138.39 for Appellee, Koller Concrete, Inc. ("Koller"). Following our review, we affirm.

The basic facts underlying this appeal are as follows.  Koller produces concrete for contractors to use in commercial and residential projects.[1] Koller blends concrete for its customers to meet the specific requirements of each particular job.  In 1995, Koller began to purchase a particular cement, Waycem, from Tube City for use in its concrete mixtures.  Koller found that Waycem added strength to its concrete mixtures and therefore favored the product.  This product appealed to Koller because Waycem was made with ground granulated blast-furnace slag, which contributed to this increased

_____

[1] Concrete is a mixture of multiple components, one of which is cement.

strength. Tube City always represented that Waycem was made with ground granulated blast-furnace slag and that it met the specifications of the industry's standard for ground granulated blast-furnace slag, C989.

In early 2006, Koller began to receive complaints on a number of projects, all of which used concrete that contained Waycem.[2] William Lambert ("Lambert"), a long-time employee and technician for Koller, responded to these complaints by visiting the jobsites to inspect the concrete. He observed severe cracking and other defects that he had not previously seen occur with Koller concrete. In February 2007, Lambert had samples of the concrete taken from one project, the Tobyhanna Army Depot project, for petrographic analysis.[3] According to Koller, the analyses of these core samples revealed that they contained no ground granulated blast-furnace slag. Koller eventually became aware that the plant from which Tube City received the components to create Waycem closed on February 17, 2006. Based on all of this information, Koller came to suspect that in 2006, Tube City sold it Waycem that was made with air-cooled slag instead of ground granulated blast-furnace slag. Lambert confronted Tube City with these suspicions. Tube City admitted that it had experimented internally

---

[2] At issue in this appeal are five particular projects. Although Koller received complaints about these projects at various times between March 2006 and March 2009, Koller supplied the concrete for all of these projects in 2006.

[3] In 2009, Koller also sent samples from the Simon project for petrographic analysis. In both instances, the samples were taken by a method called "coring," in which cylinders were bored into the concrete at multiple points.

with making Waycem with air-cooled slag, but denied selling any product containing air-cooled slag.

On March 13, 2009, Koller filed a complaint against Tube City raising claims of breach of contract, unjust enrichment, detrimental reliance, breach of express warranties, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for particular purpose, fraud, negligent misrepresentation, violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and sought attorneys' fees and punitive damages. A jury trial commenced on February 10, 2014. At the close of the evidence, the trial court granted Tube City's motion for nonsuit on Koller's UTPCPL, attorneys' fees and punitive damages claims. The jury returned a verdict in Koller's favor on the remaining counts and awarded it damages in the amount of $347,138.19. Tube City filed timely post-trial motions, seeking JNOV, a new trial, or remittitur on the amount of the verdict. Following argument, the trial court denied these motions. This appeal followed.[4]

Tube City presents the following issues for our review:

> 1. Whether the [trial] court erred in rendering evidentiary rulings that resulted in bias to [Tube City]?

---

[4] The trial court did not author an opinion addressing the issues Tube City raised on appeal, electing to rely on its opinion disposing of Tube City's post-trial motion. **See** Pennsylvania Rule of Appellate Procedure 1925(a) Statement, 7/28/14.

2. Whether the trial court erred in failing to enter a directed verdict in favor of [Tube City] and failing to strike [Koller's] claims where [Koller] failed to prove the required elements of its claims and where a new trial is required in the interest of justice?

3. Whether the trial court erred in precluding disclosure of certain documents in [Koller's] expert's file under the guise of the attorney[-]client privilege?

Tube City's Brief at 4.

Tube City first challenges multiple evidentiary rulings made by the trial court both prior to and during trial. "[I]t is well settled that the admissibility of evidence is a determination left to the sound discretion of the trial court, and it will not be overturned absent an abuse of discretion or misapplication of law." *Knowles v. Levan*, 15 A.3d 504, 507 (Pa. Super. 2011) (quoting *Reott v. Asia Trend, Inc.*, 7 A.3d 830, 839 (Pa. Super. 2010)). For a ruling on the admissibility of evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. *Id.*

Tube City begins by challenging the trial court's denial of its motion to exclude Koller's core samples because Koller failed to establish a credible and complete chain of custody. Tube City's Brief at 26. The record reveals that prior to trial, Tube City sought the exclusion of the core samples on this basis. After hearing testimony, the trial court concluded that Koller had provided sufficient evidence to establish a chain of custody and "determined that any gaps in the chain were matters for the jury, going to the weight,

and not the admissibility[,] of the evidence." Trial Court Order, 6/25/14, at 5. We can find no abuse of discretion in this decision.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Tangible evidence is authenticated properly by the establishment, through direct or circumstantial evidence, of a reasonable inference that the identity and condition of the item remained unimpaired until it was presented at trial. *See Commonwealth v. Judge*, 648 A.2d 1222, 1224 (Pa. Super. 1994). One way of creating this inference is by establishing a chain of custody of the item.

> Chain of custody is circumstantial authentication that accounts for the thereabouts of physical evidence prior to trial. *See Commonwealth v. Hudson*, [] 414 A.2d 1381 ([Pa.] 1980); [] *Judge*, [] 648 A.2d [at] 1222 [] (chain of custody was adequate for blood alcohol result). A truly complete chain of custody is not necessary for the admission of tangible evidence. Every individual who came in contact with the evidence does not have to testify, and every minor discrepancy does not have to be explained. *Commonwealth v. Snyder*, [] 385 A.2d 588 ([Pa. Super.] 1978); *Commonwealth v. Miller*, [] 371 A.2d 1362 ([Pa. Super.] 1977) (slight misdescription on property receipt does not bar admission). Every hypothetical possibility of tampering does not have to be eliminated. *Snyder*, [] 385 A.2d [at] 588. It is not necessary to prove the sanctity of an exhibit beyond a moral certainty. *Commonwealth v. Herman*, 431 A.2d 1019 (Pa.Super. 1981). Physical evidence can be admitted

> with gaps in the chain of custody. ***Commonwealth v. Bolden***, [] 406 A.2d 333 ([Pa.] 1979).

1A Pa. Admissibility of Evidence T4 (3d ed.)

At the hearing on Tube City's motion, Lambert testified that on February 27, 2007, he took six core samples from the Tobyhanna site with the assistance of two technicians from Certified Testing Laboratories ("CTL"). N.T., 2/10/14, at 23-25. The CTL technicians took the samples back to their laboratory. *Id.* at 25. CTL tested two of the cores, sent two cores to the Army Corps of Engineers, and gave two samples back to Lambert. *Id.* at 27. Lambert sent one of those cores to Grace Construction Products ("Grace") for petrographic analysis and kept the remaining core, which was labeled "S6" in his office. *Id.* at 27-28. Approximately three years after S6 was created, Lambert had S6 cut in half and he gave half to Grace and half to Koller's expert, Dr. Ozol. *Id.* at 31. Between the day in 2007 when CTL gave him S6 and the day in 2010 when Lambert had S6 halved, the sample sat untouched in Lambert's office. *Id.* at 31. Lambert also testified that he took nine core samples from the Simon project in March 2009, and indicated that he sent them directly to CTL. *Id.* at 37-38. CTL subsequently tested some of the samples and issued a report detailing the results thereof. *Id.* at 40-41. CTL returned some of the Simon project samples to Lambert, who then sent them to Grace and to Dr. Ozol. *Id.* at 41.

Tube City argues that Lambert's testimony did not establish an adequate chain of custody of the core samples. Tube City's Brief at 28-30. Yet, in making its argument, Tube City concedes that physical evidence may be admitted despite gaps in testimony establishing a chain of custody and that gaps in a chain of custody go to the weight of the evidence, as opposed to its admissibility. Tube City's Brief at 28-29 (citing **Commonwealth v. Royster**, 372 A.2d 1194 (Pa. 1977); **Broadus v. Unemployment Comp. Bd. of Review**, 721 A.2d 70 (Pa. Commw. 1998)). Tube City posits that the error here was that the testimony offered to establish the chain of custody was not credible. **Id.** at 30. This argument cannot provide relief. Credibility determinations are the sole province of the jury, and this Court, as an appellate court, cannot disturb a jury's credibility determinations. **Vattimo v. Eaborn Truck Serv., Inc.**, 777 A.2d 1163, 1165 (Pa. Super. 2001).

Tube City next challenges the trial court's handling of its request to strike Lambert's testimony on the basis that he violated a sequestration order. Tube City's Brief at 30. As background, we note that prior to the testimony of Koller's owner, Dale Koller ("Mr. Koller"), Tube City moved for Lambert's sequestration because they were both fact witness. N.T., 2/10/14, at 116. Koller's counsel opposed the motion, arguing that Lambert, although not the corporate designee, was important to Koller's trial strategy and he needed to be present. **Id.** at 116-17. The trial court

granted Tube City's motion and ordered Lambert to leave the courtroom for Mr. Koller's testimony. *Id.* at 117. Following a break in Mr. Koller's testimony, counsel for Tube City stated that he had observed Mr. Koller speaking with Lambert during the break and requested that the trial court exclude Lambert from testifying or give the jury an instruction indicating that he violated the sequestration order. *Id.* at 142-43. At that point, counsel for Koller asked the trial court to reconsider its sequestration ruling. *Id.* at 147-49. After argument from the parties and testimony from Lambert about what he and Koller discussed, the trial court ruled that although there was a technical violation of the sequestration order, there was no "specific prejudice" to Tube City. *Id.* at 159. It lifted the sequestration order and further ruled that Lambert could testify "unimpeded" and that it would not give a curative instruction regarding a sequestration violation to the jury. *Id.*

Tube City now argues that the trial court erred in reversing its sequestration order and failing to give a curative instruction to the jury. Tube City's Brief at 34-36. "[T]he decision to sequester witnesses is left to the discretion of the trial judge and will be reversed only for an abuse of discretion." *Commonwealth v. Counterman*, 719 A.2d 284, 299 (Pa. 1998). "A request for sequestration of a witness or witnesses should be specific and should be supported by some reason or reasons demonstrating

that the interests of [j]ustice require it." ***Commonwealth v. Kravitz***, 161 A.2d 861, 870 n.7 (Pa. 1960).

Pennsylvania Rule of Evidence 615 governs sequestration of witnesses and provides as follows:

> At a party's request the court may order witnesses sequestered so that they cannot learn of other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize sequestering:
>
> (a) a party who is a natural person;
>
> (b) an officer or employee of a party that is not a natural person (including the Commonwealth) after being designated as the party's representative by its attorney;
>
> (c) **a person whose presence a party shows to be essential to presenting the party's claim or defense**; or
>
> (d) a person authorized by statute or rule to be present.

Pa.R.E. 615 (emphasis added). Counsel for Koller informed the trial court that Lambert was his "number one connection to the client" and that Lambert was "integral to [his] ability to present the case." N.T., 2/10/14, at 153. In light of this representation by Koller's counsel, we find no abuse of discretion in the trial court's determination that sequestration was not authorized by Rule 615.[5] Accordingly, we find no error in the trial court's

---

[5] As the trial court did not err in its decision to deny Tube City's sequestration request, there is no merit to Tube City's additional complaint that the trial court should have given a curative instruction indicating that

decision to lift the sequestration order and refuse Tube City's request for a jury instruction.

Tube City next argues that the trial court erred in "allowing [Koller's] expert to testify without the requisite level of professional certainty." Tube City's Brief at 36. Tube City does not present any argument relating to whether Koller's expert, Dr. Ozol, testified with the requisite level of professional certainty.[6] Rather, Tube City argues that (1) the trial court failed to determine whether Dr. Ozol was qualified to testify and an expert; (2) there was an inadequate factual basis for Dr. Ozol's opinion; and (3) Dr. Ozol did not testify as to causation; i.e., that Tube City's product caused Koller's problems. *Id.* at 36, 39. Tube City did not include these issues in its Pa.R.A.P. 1925(b) statement of matters complained of on appeal, and so they have been waived. *Lazarski v. Archdiocese of Philadelphia*, 926 A.2d 459, 463 (Pa. Super. 2007), (holding that issue not raised in a statement filed pursuant to Pa.R.A.P. 1925(b) is waived for purposes of appeal); Pa.R.A.P. 1925(b)(4)(vii). Accordingly we cannot address them.

---

Lambert violated a sequestration order. We note for completeness, however, that the trial court ruled that Tube City could cross-examine Lambert as to his discussions with Mr. Koller about his testimony. N.T., 2/10/14, at 160.

[6] Dr. Ozol testified with regard to the petrographic analyses of the samples taken from the Tobyhanna and Simon projects; more specifically, that these samples did not contain ground granulated blast-furnace slag.

- 10 -

In the fourth sub-argument to this issue, Tube City contends that the trial court erred by permitting Lambert to provide expert testimony as to the cause of the concrete's failure. Tube City's Brief at 42. Tube City identifies five instances of this allegedly improper expert testimony. *Id.* In its post-trial motion, however, Tube City identified only one instance of such allegedly improper testimony, which it has not included in its brief on appeal. Brief in Support of Post-Trial Relief, 5/1/14, at 24. It is axiomatic that an appellant may not raise a claim for the first time on appeal. *Mazlo v. Kaufman*, 793 A.2d 968, 969 (Pa. Super. 2002); Pa.R.A.P. 302. "Our Supreme Court has frequently stressed the necessity of raising claims at the earliest opportunity … so that alleged errors can be corrected promptly, thus eliminating the possibility that an appellate court will be required to expend time and energy reviewing claims on which no trial ruling has been made." *Mazlo*, 793 A.2d at 969. Because Tube City did not raise these allegations of error before the trial court, we will not consider them now.

We now consider Tube City's third issue, which also involves an evidentiary ruling. When Dr. Ozol, Koller's expert, took the stand to testify, he took his file to the stand with him. During cross-examination, counsel for Tube City asked to review his file. N.T., 2/14/14, at 53. Koller asserted the right to first inspect the file to determine whether it contained any privileged communications. *Id.* at 57. The trial court permitted this, and Koller identified four documents: three emails from Koller's counsel to Dr. Ozol

- 11 -

and one memo from Lambert to Koller's counsel discussing Tube City's

expert report.[7]  *Id.* at 58-59.  Koller sought to have these documents

excluded.  The trial court reviewed the documents and agreed.  *Id.* at 60.  It

explained its reasoning as follows:

> In determining that the documents were privileged, the [c]ourt reviewed them and found them to be excludable, some as communications between counsel and the expert witness, and some as communications between counsel and Mr. Lambert in preparation for trial. N.T. Vol. VI, 58:8-60:9. As to the communications between Mr. Lambert and counsel, because Lambert is a representative of the corporate plaintiff, there can be no question that attorney-client privilege applies. As to the communications between Dr. Ozol and counsel, we point to the recent decision of the Pennsylvania Supreme Court in **Barrick v. Holy Spirit Hosp. of Sisters of Christian Charity**, [91 A.3d 680 (Pa. 2014)]. In **Barrick**, the Supreme Court of Pennsylvania announced a bright-line rule precluding discovery of communications between attorneys and expert witnesses.  Although **Barrick** was decided subsequent to the trial of this matter, it was decided purely on long-standing discovery rules.  As such, it is clear that this [c]ourt properly interpreted those rules in withholding communications between [Koller's] counsel and [its] expert witness from disclosure to [Tube City].

Trial Court Opinion, 6/25/14, at 16-17.

Presently, Tube City does not argue that the trial court erred in finding

that the attorney-client privilege applied to these documents.  It argues only

---

[7] One email had a laboratory's analysis of the core samples attached; one forwarded correspondence between Lambert and Koller's counsel; and one attached both a different analytical report and correspondence between Koller's counsel and Lambert about the report.

that the attorney-client privilege was waived when Dr. Ozol took the stand with his file. Tube City's Brief at 59. Although Tube City raised an issue regarding the trial court's application of the attorney-client privilege in its post-trial motion, it did not raise this basis for relief (i.e., that the privilege was waived because Dr. Ozol took the stand with these documents) therein. As such, it cannot raise it as a basis for relief now on appeal. **See Commonwealth v. Santiago**, 980 A.2d 659, 666 n.6 (Pa. Super. 2009) ("[A] new and different theory of relief may not be successfully advanced for the first time on appeal."); **Nogowski v. Alemo-Hammad**, 691 A.2d 950, 955 (Pa. Super. 1997) ("Failure to preserve issues in a post-trial motion results in a waiver of that issue on appeal.").[8]

We have reached Tube City's last issue, in which it argues that the trial court should have granted its post-trial motion because Koller "failed to prove the elements of its claims and a new trial is required in the interest of justice." Tube City's Brief at 43. Tube City separates its argument on this issue into three subsections, which we address *seriatim*.

Tube City begins by arguing that the trial court should have entered JNOV on Koller's fraud and negligent misrepresentation claims because

---

[8] Even if this issue had been properly preserved in Tube City's post-trial motion, we note that at trial, Tube City agreed to allow Dr. Ozol to remove any attorney-client privileged communications from his file before Tube City would inspect it. N.T., 2/14/14, at 59. In light of this concession, Tube City could not now prevail on its argument that the attorney-client privilege was waived because Dr. Ozol took the stand with these documents in his file.

Koller failed to prove the elements of fraud by clear and convincing evidence.[9] *Id.* at 43.

> The proper standard of review for an appellate court when examining the lower court's refusal to grant a judgment n.o.v. is whether, when reading the record in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict. Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence. Absent an abuse of discretion, the trial court's determination will not be disturbed.

*Ferrer v. Trustees of Univ. of Pennsylvania*, 825 A.2d 591, 595 (Pa. 2002) (internal citations omitted).

JNOV is an extreme remedy, as the trial court "cannot lightly ignore the findings of a duly selected jury." *Burton-Lister v. Siegel, Sivitz & Lebed Associates*, 798 A.2d 231, 236 (Pa. Super. 2002). A motion for JNOV challenges the sufficiency of the evidence presented at trial. *Rohm & Haas Co. v. Cont'l Cas. Co*., 732 A.2d 1236, 1248 (Pa. Super. 1999). As

---

[9] Under this subsection, Tube City also argues that the trial court should have struck these claims because they were barred by the statute of limitations. Tube City's Brief at 43. This argument does not relate to whether Koller adequately established the elements of fraud or negligent misrepresentation, but is a completely separate issue. Tube City did not include an issue raising the statute of limitations in its statement of questions involved, *see* Tube City's Brief at 4, and so it has been waived. *Cobbs v. SEPTA*, 985 A.2d 249, 256 (Pa. Super. 2009) (holding that issue not explicitly raised in appellant's statement of the questions involved is waived); Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.").

such, JNOV is only proper where, when viewing the evidence in the light most favorable to the verdict winner, the facts are so clear that reasonable minds could not disagree that the verdict was improper. ***Burton-Lister***, 798 A.2d at 236. "JNOV … may not be employed to invade the province of the jury. … Thus, where the jury has been presented with conflicting evidence, a motion for JNOV should be denied." ***Rohm & Haas Co.***, 732 A.2d at 1248 (internal citations omitted).

Initially, we observe that Tube City presents no argument in support of its claim that the trial court should have entered JNOV on the negligent misrepresentation count, and so we will not consider it.[10] ***See Owens v. Mazzei***, 847 A.2d 700, 705-06 (Pa. Super. 2004) (holding that the Superior Court will not address an issue presented in the statement of questions involved where no corresponding analysis is included in the brief).

With regard to fraud, Tube City argues that JNOV was appropriate because Koller failed to establish that Tube City sold it a product that did not contain ground granulated blast-furnace slag. Tube City's Brief at 45. Tube City points to portions of Koller's witnesses' testimony that it believes favored Tube City and alleges that Koller's witnesses were not credible. ***Id.***

---

[10] It is fairly obvious, however, that a plaintiff is not required to prove fraud in order to establish negligent misrepresentation. ***See Milliken v. Jacono***, 60 A.3d 133, 141 (Pa. Super. 2012) (stating the elements of negligent misrepresentation). Thus, even if Tube City had not waived this issue for failure to develop an argument in support thereof, it would not have been entitled to relief on this claim.

This argument does not attack the sufficiency of Koller's evidence, but rather the weight the jury should have ascribed to Koller's evidence. Tube City is asking this Court to "invade the province of the jury," and that is not a basis for JNOV. **Rohm & Haas Co.**, 732 A.2d at 1248.

Next, Tube City argues that the trial court should have struck Koller's breach of contract claim because Koller failed to present sufficient evidence to establish a causal connection between Tube City's product and the damages alleged at trial. Tube City's Brief at 48-49. Yet again, Tube City basis this argument on allegations that Koller's evidence was incredible and that the jury should have believed other evidence that was more favorable to Tube City. **Id.** at 49-50.[11] These arguments challenge the jury's credibility determinations and findings of fact, not the sufficiency of the evidence. This argument is therefore misplaced and affords Tube City no relief.

Tube City further argues that the trial court erred in refusing its request to limit damages to the amounts claimed for the Tobyhanna and Simon projects, on the basis that Koller only produced core sample evidence as to these two projects. **Id.** Tube City argues that a new trial on damages is appropriate because of this error.

---

[11] Specifically, Tube City again points to perceived flaws in the chain of custody of a Tobyhanna core sample as well as testimony that errors in the mixing of the cement (as opposed to the composition of Waycem) could have led to the failure of the concrete. Tube City's Brief at 49-51.

> The grant of a new trial is a matter within the discretion of the trial court. If the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgment for the jury's. Nevertheless, where the jury's verdict is so contrary to the evidence as to "shock one's sense of justice" a new trial should be awarded.

***Rettger v. UPMC Shadyside***, 991 A.2d 915, 934 (Pa. Super. 2010)

(internal citations omitted).

The trial court explained its rejection of Tube City's request as follows:

> [Koller] alleged damages in the amount of [$355,000]. [It was] awarded damages totaling [$347,138.39]. Pretrial, [Tube City] made an oral motion to limit [Koller's] recovery to damages incurred on the [] Simon and Tobyhanna projects, where core samples were taken and evidence was presented as to the absence of [ground granulated blast-furnace slag]. N.T. Vol. I, 6:16-23. Upon consideration, the [c]ourt denied the motion, allowing all of the evidence on damages to go to the jury for their consideration. N.T. Vol. I, 19:1-7.
>
> [Koller] presented testimonial and documentary evidence that it spent [$277,389.69] on the allegedly defective Waycem, which it then used in certain projects, incurring damages. In this regard, Koller presented testimony and photographs as to cracking on what they referred to as the "Lusitania Liberty" project, pursuant to which they incurred costs amounting to [$2,200] for repairs. N.T., Vol. II, 57:18-66:23. Likewise, [Koller] presented testimonial evidence of cracking on the "Big Creek" project, where [it] incurred costs of [$6,438]. N.T., Vol. II 66:25-71:9. As to the Grant Homes project, Mr. Lambert presented photographic evidence of cracking, and testified that no expense was incurred to make repairs on that project. [N.T.] Vol. II, 71:11-75:7. [Koller] also presented evidence of [$35,000] expended to settle a lawsuit arising out

of the problems at Tobyhanna, as well as the expense of [$24,948.77] in legal fees associated with that litigation. N.T. Vol II, 83:20-85:20, 87:7-88:19. On the [] Simon project, evidence was presented that [Koller] incurred costs in the amount of [$9,600]. N.T. [Vol. II] 88:21-92:4.

This is not a case where damages were awarded in the absence of evidence. Rather, [Koller] offered direct evidence as to some of [its] alleged injuries, and circumstantial evidence as to others. While [Koller] did not take core samples of every project, the evidence presented was clearly sufficient for the jury to award damages upwards of [$355,000] and [the] award fell below that amount. Accordingly, the verdict does not shock the conscious, and shall be permitted to stand.

Trial Court Opinion, 6/25/14, at 11-12.

We can find no abuse of discretion in the trial court's ruling. Tube City's true complaint is that the award is based in part on the circumstantial evidence and inferences drawn by the jury, but it provides us with no authority that this is impermissible. Koller presented expert testimony that the Waycem used in two projects did not contain the ground granulated blast-furnace slag, and testimony that three additional projects that used Waycem from the same defective batch also failed. The jury was free to accept this evidence as credible and conclude that the Waycem used in all five of these projects caused them to fail, and therefore, caused the damages. As the amount of the verdict bears a reasonable relationship to the evidence, there was no basis to disturb it. *Rettger*, 991 A.2d at 934.

- 18 -

Lastly, Tube City argues that the trial court erred in denying its motion for a mistrial. It argues that it was entitled to a mistrial because the trial court made "multiple evidentiary errors" and because "the damages award is … too speculative or uncertain." Tube City's Brief at 56-57. We have considered and rejected Tube City's claims of evidentiary errors and its claim regarding the appropriateness of the verdict. Accordingly, Tube City's argument fails on its premise.

Judgment affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>4/21/2015</u>