J-A07017-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THE EYE CENTER OF CENTRAL PENNSYLVANIA, LLP AND SCOTT HARTZELL, M.D. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DANIEL FASSERO, M.D. AND CENTRAL VISION EYECARE, LLC | : | No. 1433 MDA 2019 |
| | : | |
| Appellants | : | |

Appeal from the Order Entered June 25, 2019
In the Court of Common Pleas of Northumberland County Civil Division at
No(s):  CV-2019-00599

BEFORE:  OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY DUBOW, J.:        **FILED SEPTEMBER 04, 2020**

Daniel Fassero, M.D. ("Dr. Fassero") and Central Vision Eyecare, LLC ("Central Vision Eyecare") (collectively "Appellants"), appeal from the June 25, 2019 Order entered in the Northumberland County Court of Common Pleas granting the request for injunctive relief filed by The Eye Center of Central Pennsylvania, LLP ("Eye Center") and Scott Hartzell, M.D. ("Dr. Hartzell") (collectively "Appellees").[1]  After careful review, we affirm.

_____

[1] This is an interlocutory appeal pursuant to Pennsylvania Rule of Appellate Procedure 311(a)(4) which permits immediate appeal for "[a]n order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction[.]"  Pa.R.A.P. 311(a)(4); *see **Pennsylvania Orthopaedic Soc. v. Indep. Blue Cross**, 885 A.2d 542, 547 (Pa. Super. 2005) ("An order which grants a request to enjoin

**Facts and Procedural History**

Dr. Fassero and Dr. Hartzell were partners in the Eye Center, an ophthalmology practice in Central Pennsylvania.[2] In March 2018, Dr. Fassero filed a Complaint against Dr. Hartzell seeking a determination as to whether Dr. Fassero should be permitted to remain a partner in the Eye Center even though he had violated the Eye Center's Partnership Agreement by failing to become board certified in Ophthalmology.[3] On November 15, 2018, the trial court determined that Dr. Fassero had not complied with the Partnership Agreement and entered an Order directing that the Eye Center would dissolve 30 days later on December 17, 2018.[4]

Notwithstanding the dissolution of the partnership, the parties intended that the Eye Center would continue its ophthalmology practice, but solely under the direction of Dr. Hartzell. On November 27, 2018, the Eye Center

_____

certain conduct, . . . is an interlocutory matter specifically authorized for appeal as of right by Rule 311(a)(4).").

[2] The parties and Dr. Jan Hilliker, entered into a Partnership Agreement on August 1, 2007, forming the ophthalmology practice known as The Eye Center of Central PA. When Dr. Hilliker withdrew from the partnership on July 13, 2009, Appellee and Appellant each became 50 percent owners of the partnership.

[3] **See** Partnership Agreement at ¶ 15.1 (providing that a Partner "shall be treated as serving a notice of withdrawal" from the partnership if, among other things, "the Partner is no longer Board Certified or Board Eligible to practice the specialized field of medicine under which he was certified at the time of executing this Agreement.")

[4] December 15, 2018, the thirtieth day after entry of the Order, fell on a Saturday.

sent a letter to 2,700 patients notifying them that Dr. Fassero was terminating his relationship with the Eye Center as of December 17, 2018. The letter instructed the patients to reschedule existing appointments with "one of our other providers." Letter, 11/27/18.

As a result of this letter, Dr. Fassero's counsel requested that the trial court determine the manner in which the parties would notify Eye Center patients about Dr. Fassero's departure. On November 30, 2018, the trial court agreed and ordered that it would hold an informal conference with counsel on December 7, 2018, and then schedule an additional conference for December 12, 2018, to address the issue of notifying the patients of the Eye Center.

Although the trial court issued its Order to address patient notification on November 30, 2018, on the following day, Dr. Fassero entered a branch office of the Eye Center after it had closed. An Eye Center employee accompanied Dr. Fassero. Using the employee's password, Dr. Fassero accessed the Eye Center's billing system and printed thousands of "Superbills," covering the period from January 2018, to December 1, 2019. The Superbills contained, among other things, patient contact information.[5]

At the scheduling conference on December 7, 2018, no one informed the trial court that Dr. Fassero had misappropriated the Eye Center's Superbills the week before. On December 12, 2018, the court entered an

---

[5] "Superbills" are electronic records of each Eye Center patient's visit and contain a patient's demographic information, name, address, insurance information, e-mail address, phone number, and reason for visit. Appellee described the "Superbills" as the Eye Center's "playbook."

Order directing the Eye Center to notify its patients as soon as possible that Dr. Fassero was leaving the practice and approved the form of the notification letter. The court order did not authorize Dr. Fassero to notify any patients.

The Eye Center subsequently notified its patients that Dr. Fassero was leaving the practice and opening a new practice, Central Vision Eye Care. The letter included the address and phone number for Central Vision Eye Care.[6]

Although the trial court had not authorized Dr. Fassero to notify Eye Center patients about his departure from the Eye Center and his establishment of a new competing practice, on January 17, 2019, Dr. Fassero used the contact information from the Superbills and sent a letter with "non-approved, misleading language, to patients of the Eye Center in order to solicit them to his new practice, owned by his wife, Central Vision Eyecare, LLC." Trial Ct. Op., 9/27/19, at 2.

On March 21, 2019, after discovering that Appellant had not only misappropriated the Eye Center's Superbills, but also used that information to solicit the Eye Center's patients to move to Dr. Fassero's new practice,

---

[6] The redacted copy of this letter was undated and stated: "We are writing to advise you that Dr. Daniel Fassero will be leaving the Eye Center on December 15, 2018 to open his new practice, Central Vision Eye Care, LLC, with its main office located at 23 Arch Street, Milton PA 17847, telephone number (570) 768-4970. If you have questions, please contact us at (866) 995-3937 or Dr. Fassero's new office at the number above." Hearing Exhibit P-14.

Appellees filed a Complaint[7] and a request for a Preliminary Injunction. Following discovery, on May 30, 2019, the trial court held a hearing on Appellees' request for a Preliminary Injunction.[8] On June 25, 2019, the court granted Appellees' request for a Preliminary Injunction, directing Appellants to, *inter alia*, return the Superbills, keep the information contained in the Superbills in confidence, and desist from using the information from the Superbills.

Appellant filed a Motion for Reconsideration of the court's June 25, 2019 Order and/or for Stay of Proceedings. On July 23, 2019, the court expressly granted reconsideration and ordered the parties to brief the issues raised by Appellant. On August 15, 2019, the court affirmed its earlier Order in its entirety and denied Appellant's request for a stay pending appeal.

This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Was a preliminary mandatory injunction supported by record evidence of immediate irreparable harm?

2. Was a preliminary mandatory injunction necessary to preserve the status quo?

---

[7] In the Complaint, Appellants raised claims alleging theft of trade secrets, conversion of business information, unfair competition, tortious interference with prospective contractual relations, breach of contract and breach of fiduciary duty.

[8] The court heard a second day of testimony on June 5, 2019.

3. Did the [t]rial [c]ourt err in failing to apply the doctrine of unclean hands to bar Appellee[] from equitable relief, and by failing to even address the issue of unclean hands in its June 25, 2019 Order?

4. Did the [t]rial [c]ourt err in concluding that the super bills taken by Appellant [] were "trade secrets" belonging to [] Eye Center?

5. Did the [t]rial [c]ourt erroneously deprive Appellant[] of [its] constitutionally protected property rights by issuing an Order that took Appellant['s] work product away and gave it to [] Appellee[] without the benefit of a trial and final adjudication?

Appellant's Brief at 7 (reordered for ease of disposition).

**The Nature of Injunctive Relief**

Each of Appellant's issues challenges the trial court's determination that a mandatory preliminary injunction was appropriate to restore the status quo.

As a prefatory matter, we note the distinction between mandatory injunctions and prohibitory injunctions. Mandatory injunctions "command the performance of some positive act to preserve the status quo" whereas prohibitory injunctions "enjoin the doing of an act that will change the status quo." *Mazzie v. Commonwealth*, 432 A.2d 985, 988 (Pa. 1981). The injunction in the instant matter contains both mandatory and prohibitory provisions in that it ordered that Appellants return the Eye Center's Superbills and desist from using the information contained in them. *See*, *e.g.*, *Three Cty. Servs., Inc. v. Phila. Inquirer*, 486 A.2d 997, 1000 (Pa. Super. 1985) (explaining that a preliminary injunction that ordered the defendant to cease soliciting the plaintiff's customers, return the plaintiff's customers, and refer

all new customers to the plaintiff contained mandatory and prohibitory provisions).

**Standard of Review**

Generally, we review the grant or denial of a preliminary injunction for an abuse of discretion and "examine the record to determine if there were any apparently reasonable grounds for the action of the court below." ***Summit Towne Ctr., Inc. v. Shoe Show of Rocky Mount, Inc.***, 828 A.2d 995, 1000 (Pa. 2003) (citation omitted). However, because courts should issue a mandatory preliminary injunction sparingly, we apply greater scrutiny to a court's decision to issue a mandatory, rather than a prohibitory, preliminary injunction. ***Mazzie***, 432 A.2d at 988; ***Three Cty. Servs., Inc.***, 486 A.2d at 1000. Thus, we review the grant of a mandatory injunction to determine whether the plaintiff has established a clear right to relief. ***Mazzie***, 432 A.2d at 998. ***See also McMullan v. Wohlgemuth***, 281 A.2d 836, 841 (Pa. 1971) (explaining that mandatory preliminary injunctions are permissible in "exceptional circumstances . . . to prevent irreparable injury where the rights of the parties are entirely clear"). Importantly, we do not consider the merits of the underlying controversy when conducting this review. ***AmQuip Crane Rental, LLC v. Crane & Rig Servs., LLC***, 199 A.3d 904, 913 (Pa. Super. 2018).

Using this standard of review in reviewing the errors that Appellants raise on appeal, we conclude that the trial court did not abuse its discretion in

concluding that Appellees established a clear right to relief and, thus, in granting the preliminary injunction.

**The Record Supports the Trial Court's Finding that Dr. Fassero's Misconduct Caused Appellees Immediate and Irreparable Harm.**

In its first issue, Appellants claim that the trial court abused its discretion in granting Appellees' request for injunctive relief because Appellees failed to prove that, absent injunctive relief, Appellees would suffer immediate irreparable harm that Appellants could not compensate fully with monetary damages. Appellants' Brief at 24-28. Appellants argue that Appellees were not entitled to relief because: (1) they failed to adduce any evidence that Dr. Fassero's solicitation of the Eye Center's patients "presented any immediate threat to [Appellees'] practice or the existence of Appellee Eye Center"; and (2) they failed to demonstrate that monetary damages could not adequately compensate Appellees for any losses caused by Dr. Fassero's misdeeds.[9] *Id.* at 25.

In support of its first argument—that Appellees failed to prove entitlement to injunctive relief because they did not show that the harm caused by Dr. Fassero's conduct threatened the existence of the Eye Center—

---

[9] To the extent that Appellants also claim that, because the parties' Partnership Agreement did not have a non-compete provision, Appellees could not "legitimately" complain about Dr. Fassero's appropriation of Appellees' patient records, Appellants have not developed an argument in support of this claim with citation to case law. Appellants' Brief at 25. Accordingly, Appellants have waived it. *See Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (explaining that where a party has "failed to cite any authority in support of a contention" the argument is "not appropriately developed" and is waived).

Appellants rely on ***Three Cty. Servs.***, ***supra***. In that case, the trial court granted a preliminary injunction in favor of a newspaper delivery service. ***Id.*** at 1000. On appeal, the Superior Court explained that, where a plaintiff seeking relief has suffered only compensable monetary damages, injunctive relief would ordinarily not be appropriate. ***Id.*** at 1001. This Court further explained, however, if the monetary loss threatens the existence of the business, a trial court may issue a preliminary injunction. ***Id.*** We concluded that, "where [] the irreparable harm claimed is not solely monetary, and therefore not subsequently fully compensable in damages, the plaintiff need not prove a threat to the existence of his business, but simply that the damage remedy is not adequate." ***Id.*** at 1001 n.1. Stated another way, a plaintiff whose damages are **solely monetary** may receive injunctive relief only if the magnitude of the monetary damages imperils the existence of his business.

Instantly, Appellees did not claim that their damages were solely monetary, but rather both monetary and reputational. Dr. Hartzell testified that Dr. Fassero's misconduct resulted in both monetary damages and a loss to the reputation of the Eye Center. N.T., 5/30/19, at 183, 195. The trial court found this evidence persuasive when it concluded that "the loss of patients is an immeasurable one . . . [whose] impact cannot be cured by a monetary award." Trial Ct. Op. at 3-4. Since the trial court did not find that Appellants' injury was solely monetary and the record supports that finding, the trial court was not required to find that Appellees' damages imperiled the Eye Center's business and Appellants' claim of error fails.

Appellants next argue that Appellees failed to demonstrate that monetary damages could not adequately compensate them for the harm that Dr. Fassero's misconduct caused. Appellants' Brief at 25. Since Appellants focus this argument on the weight the trial court placed on the evidence, and we cannot and will not reweigh that evidence, this argument likewise fails. *See Koller Concrete, Inc. v. Tube City IMS, LLC*, 115 A.3d 312, 321 (Pa. Super. 2015) ("Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence.") (citation omitted).

For purposes of issuing injunctive relief, an injury is considered "irreparable" if the damages it causes "can be estimated only by conjecture and not by an accurate pecuniary standard." *Sovereign Bank v. Harper*, 674 A.2d 1085, 1093 (Pa. Super. 1996).

In this case, the trial court concluded that the damage to Appellees was "immeasurable." Trial Ct. Op., at 3-4. The record supports this conclusion. Dr. Hartzell testified that the solicitation letters that Dr. Fassero sent were misleading and the harm that Dr. Fassero's solicitation letters cause to the Eye Center's business and reputation is not susceptible to precise calculation. N.T., 5/30/19, at 183, 195. He further testified that he did not know, and had no way of knowing, how many thousands of Eye Center patients received solicitation letters, to what degree the letters had harmed the Eye Center, and even whether Dr. Fassero would continue to send additional solicitations. *Id.* at 194-96. Dr. Hartzell also testified that he could not quantify the

reputational harm Dr. Fassero had caused in his rural, tight-knit community. *Id.* at 195.

Appellants argue that Appellees could have established monetary damages because Dr. Hartzell "testif[ied] to the value of each patient lost to Appellant Central Vision" and that Appellees could have "establish[ed] the number of patients he believes he lost due to the actions of Appellant [] by identifying the patients who appear only in the [S]uperbills and not in Dr. Fetterman's patient list[10] or in the 200 unsolicited voicemails that patients left on Appellants' phone." Appellants' Brief at 25-26.

That argument fails to recognize that the trial court, when determining whether the damages Dr. Fassero's misconduct caused Appellees were irreparable, found Appellees' evidence persuasive. The trial court properly relied up on the evidence in the record that it found credible and persuasive in concluding that Dr. Fassero's misconduct caused Appellees to suffer irreparable damages. *See* Trial Ct. Op. at 3-4. We are bound by the weight the trial court placed on the evidence and cannot reweigh it. Thus, this argument likewise fails.

**The Trial Court Properly Found That It Had To Enter a Preliminary Injunction to Preserve the Status Quo.**

In its second issue, Appellants claim that the trial court erred in entering a preliminary injunction to preserve the status quo. Appellants' Brief at 32-

---

[10] Dr. Fetterman is the doctor from whom Appellant purchased his new ophthalmology practice.

33. Appellants' argument is two-fold. First, they argue that the trial court erred when it identified "the status quo to be preserved [as] the possession by the Eye Center as the proprietor of its generated [Superbills] and the information contained therein." *Id.* at 32 (citing Trial Ct. Op. at 2). Instead, Appellants baldly assert that, when considering whether to issue a preliminary injunction, "the status quo to be preserved was the situation immediately before the commencement of the [instant] litigation." *Id.* Second, Appellants argue that the issuance of a mandatory preliminary injunction requiring it to return the Superbills to Appellees was "harsher relief than required to maintain the status quo," and that an injunction simply enjoining Appellants from making any further use of the Superbills information would have been sufficient. *Id.* at 32-33.

"[T]he mandatory preliminary injunction is designed to restore the status quo to the last actual, peaceable (and) noncontested status which preceded the pending controversy." *Shanaman v. Yellow Cab Co. of Phila.*, 421 A.2d 664, 666 (Pa. 1980) (citation omitted). *See also Santoro v. Morse*, 781 A.2d 1220, 1229 (Pa. Super. 2001) ("The purpose of a preliminary injunction is to preserve the status quo as it exists **or previously existed before the acts complained of**, thereby preventing irreparable injury or gross injustice." (emphasis in original)).

In the instant case, and contrary to Appellants' claim, the status quo the court properly sought to preserve was the one existing prior to Dr. Fassero's December 1, 2018 misappropriation of the Eye Center's Superbills. Therefore,

the trial court properly entered an injunction to restore the status quo as it was at that time.

We are likewise unpersuaded by Appellants' claim that the court should not have ordered the extraordinary remedy of requiring it to return the Superbills to Appellees. In light of the fact that Dr. Fassero misappropriated the Superbills, failed to notify the trial court that he had misappropriated them, and then, without court authorization, used the contact information contained in the Superbills to solicit the Eye Center's patients to his competing ophthalmology practice, the trial court did not abuse its discretion in determining that the return of the Superbills to prevent Dr. Fassero from continuing to use the contact information was appropriate and proportional. Appellant's second claim, therefore, fails.

**The Trial Court Did Not Err in Not Finding that Appellees Had Unclean Hands.**

In its third issue, Appellants claim that the trial court erred in failing to apply the doctrine of unclean hands to bar Appellees from obtaining equitable relief. Appellants' Brief at 20-24. Appellants assert that Appellees acted in bad faith in its communication with patients, contending that both the contents of Appellees' patient communications and their failure to notify the trial court that they had sent a letter to patients on November 27, 2018, evidences their unclean hands. *Id.* Appellants contend that this behavior precluded the court from issuing a mandatory preliminary injunction in Appellees' favor. *Id*

Our Supreme Court has stated:

- 13 -

> [A] court may deprive a party of equitable relief where, to the detriment of the other party, the party applying for such relief is guilty of bad conduct relating to the matter at issue. The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy in issue.

*Terraciano v. Dep't. of Transp., Bureau of Driver Licensing*, 753 A.2d 233, 237-38 (Pa. 2000) (citations omitted). The burden of proving unclean hands is on Appellants. *See Montgomery Bros., Inc. v. Montgomery*, 112 A. 474, 475 (Pa. 1921).

Even where a party has acted with unclean hands, the trial court "is free to refuse to apply the unclean hands doctrine if consideration of the record as a whole convinces the court that its application will cause an inequitable result." *Matenkoski v. Greer*, 213 A.3d 1018, 1028 (Pa. Super. 2019) (citation and brackets omitted).

In Appellants' account of the "facts" supporting their claim that Appellees' unclean hands should have precluded the trial court from granting Appellees' injunctive relief, Appellants have downplayed the extent of Dr. Fassero's own misconduct. Rather, Appellants attempt to cast Dr. Fassero's misconduct as merely a reaction to the Eye Center's letter notifying its patients on November 27, 2018, to Dr. Fassero's departure. The trial court did not, however, find this argument or the evidence Appellants offered in support of it persuasive. The trial court found more persuasive Appellees' evidence that Dr. Fassero misappropriated the Eye Center's property and then used it, without the trial court's approval, to solicit Eye Center patients to Dr. Fassero's competing ophthalmology practice. Trial Ct. Op. at 2. Appellants' argument

is essentially a plea to this Court to reweigh the evidence, which we cannot and will not do. **See Koller Concrete**, **supra** at 321.

Following our review of the record, we conclude that the trial court did not abuse its discretion in weighing the evidence in Appellees' favor and in dismissing this argument. Appellants are, therefore, not entitled to relief on this claim.

### The Trial Court Properly Found that the Superbills Were Property of the Eye Center and Trade Secrets that Dr. Fassero Misappropriated.

In their fourth issue, Appellants claim that Appellees failed to establish a clear right to possession of the Superbills under either the parties' partnership agreement or Pennsylvania's Trade Secrets Act. Appellants' Brief at 28-30. Appellants first assert that the Superbills associated with his patients are not an Eye Center trade secret because it was Dr. Fassero who created each Superbill that he took using information he obtained from the patients he treated at the Eye Center. **Id.** at 29-30 (citing **Fidelity Fund, Inc. v. Di Santo**, 500 A.2d 431 (Pa. Super. 1985)[11]).[12]

---

[11] In **Fidelity Fund**, **supra**, the plaintiff, an insurance brokerage business, sought to recover commissions received by defendant, plaintiff's former employee, after the defendant began working for a direct competitor. **Fidelity Fund**, 500 A.2d at 433-34. This court denied the plaintiff relief because the plaintiff had not shown that the defendant misused trade secrets as to, *inter alia*, the customers that he developed by his individual effort while in the plaintiff's employ. **Id.** at 436-37.

[12] Appellants also claim that Dr. Fassero could not have "misappropriated" the Superbills because he was still a partner of the Eye Center at the time he took them on December 1, 2018. Appellants' Brief at 30. Appellants have not,

- 15 -

The Pennsylvania Uniform Trade Secrets Act ("UTSA") defines the term "trade secret" and allows a court to issue injunctive relief based on threatened or actual misappropriation of a trade secret. **See** 12 Pa.C.S. §§ 5302-03. The UTSA specifically defines a trade secret as including a customer list:

**§ 5302. Definitions**

* * *

"Trade secret." Information, including a formula, drawing, pattern, compilation **including a customer list**, program, device, method, technique or process that:

(1) **Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.**

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Pa.C.S. § 5302 (emphasis added).

A person has misappropriated a trade secret "when he acquires knowledge of another's trade secret in circumstances giving rise to a duty to maintain its confidentiality and then discloses or uses that trade secret without

---

however, developed an argument in support of this claim with citation to legal authority. Accordingly, they have waived it. **See Lackner**, 892 A.2d at 29-30 (explaining that where a party has "failed to cite any authority in support of a contention" the argument is "not appropriately developed" and is waived). We note also, that the Superbills were Eye Center property with information about Eye Center patients and Dr. Fassero misappropriated the Superbills from the Eye Center and then used the information contained in them to harm the business of the Eye Center.

the other's consent." ***Mifflinburg Tel., Inc. v. Criswell***, 277 F.Supp.3d 750, 799 (M.D. Pa. 2017) (citation omitted).

Here, the trial court found, and Appellants do not dispute, that the Superbills are a "trade secret" under the UTSA because the Superbills are a "compilation including a customer list that derives independent economic value, actual or potential . . . not readily available by proper means." Trial Ct. Op., 9/27/19, at 4 (internal quotation marks omitted).

Appellants claim, however, that even if the Superbills were trade secrets, they were Dr. Fassero's trade secrets because Dr. Fassero only took those Superbills that contained information about the patients that he treated, collected by his own individual effort. Appellants, therefore, conclude that since Dr. Fassero collected the information, the Superbills were his property and not the property of the Eye Center.

This argument fails to acknowledge that at the time Dr. Fassero treated the patients and collected their information, the patients were patients of the Eye Center for whom Dr. Fassero worked. Thus, as the trial court properly found, the Superbills were the property of the Eye Center and not of Dr. Fassero. Trial Ct. Op. at 4. It is irrelevant to the issue of ownership that it was Dr. Fassero who collected and memorialized the patient information contained in the Superbills.

Appellants also argue that, although the Superbills were partnership property when Dr. Fassero misappropriated them on December 1, 2018, the Superbills ceased to be partnership property as of December 15, 2018, when

Dr. Fassero withdrew from the partnership. *Id.* at 28 (citing Partnership Agreement at ¶ 15(a)). He claims that the Partnership Agreement is not clear "that when only one Partner remains, he automatically becomes the sole owner of the former Partnership assets listed in that provision." *Id.* (citing Partnership Agreement at ¶ 15(a)(xi)). Last, he asserts that the Partnership Agreement does not include "patient lists" and "patient contact information" as partnership assets. *Id.* (citing Partnership Agreement at ¶ 15(a)(xi)).

> Paragraph 15 of the Partnership Agreement provides as follows:
>
> (a) Upon one Partner's death, permanent disability, retirement or withdrawal from the partnership's practice, the practice shall be continued by the remaining Partner or Partners[.] The remaining Partner or Partners shall purchase and interest of the other Partner and shall continue the partnership practice[.]
>
> ***
>
> (xi) All patient charts, histories, files, x-rays, records and the like shall, upon any Partner's death, retirement, or withdrawal under this Paragraph 15, continue to be an asset of the Partnership and shall not be transferred unless the continuing practice is instructed otherwise by any patient or patients involved.

Partnership Agreement, 8/1/07, at ¶ 15(a)(xi).

Appellants claim that Appellees failed to establish that they had a clear right to sole possession of the Superbills because Dr. Fassero withdrew from the partnership on December 15, 2018, and the Partnership Agreement is not clear about what happens to partnership property when only one partner remains. We disagree. The plain language of the Partnership Agreement provides that, "[a]ll patient records . . . shall, upon any Partner's . . .

withdrawal [from the partnership's practice] continue to be an asset of the Partnership[.]" Here, Dr. Fassero concededly withdrew from the partnership on December 15, 2018. Thus, pursuant to the Partnership Agreement, the Superbills remained an asset of the partnership.

Furthermore, and more relevantly, on December 1, 2018, when Dr. Fassero misappropriated the Superbills he had not yet withdrawn from the partnership, both he and Dr. Hartzell were partners, and the Superbills were clearly property of the partnership. For purposes of evaluating the propriety of the trial court's grant of injunctive relief in Appellees' favor, therefore, the relevant consideration is not what would happen to the assets of the partnership upon Dr. Fassero's withdrawal, but the status of the Superbills as partnership property at the time of Dr. Fassero misappropriated them.

Moreover, we agree with the trial court that the Superbills—electronic records of each Eye Center patient's visit that contain a patient's demographic information, name, address, insurance information, e-mail address, phone number, and reason for visit—are precisely the kind of "records" defined as partnership assets in Paragraph 15(xi). *See* Trial Ct. Op. at 4. Accordingly, this claim fails.

## The Trial Court Held a Hearing and Did Not Deprive Appellants of Their Due Process Rights.

In its final issue, Appellants claim that the trial court erred in ordering them to return the Superbills to the partnership before making a final determination on their ownership. Appellants' Brief at 30-31. In particular,

Appellants assert that the Superbills pertaining to his patients were his work-product over which he had a compelling property right. *Id.* at 31. They argue that the trial court deprived them of their constitutionally protected right to that property without due process. *Id.* They conclude that the trial court should not have ordered them to return the Superbills because Appellees' "right to sole possession is and was not clear." *Id.*

The record belies Appellants' claim that the trial court denied them due process. As noted above, the trial court conducted a full evidentiary hearing at which the parties had the opportunity to present evidence, cross-examine witnesses, and to submit post-hearing briefs. The trial court also granted Appellants' Motion for Reconsideration of its Order, before affirming its prior order. The trial court had a robust record upon which to determine that Appellees were entitled to injunctive relief and, thus, did not violate Appellants' due process rights.

Order affirmed.


Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/4/2020